**THE HONORABLE THOMAS S. ZILLY**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| BLACKSTONE INTERNATIONAL, LTD., a Maryland corporation, | CASE NO. 2:20-CV-00964-TSZ |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | |
| COSTCO WHOLESALE CORPORATION, a Washington corporation, | **JURY DEMAND** |
| Defendant. | |

Plaintiff Blackstone International, Ltd. ("Blackstone"), for causes of action against defendant Costco Wholesale Corporation ("Costco"), alleges as follows:

## I.  SUMMARY

1.     As part of its mission statement, Costco touts that it "will conduct [its] business" according to a "Code of Ethics" as follows:

> Our Code of Ethics
> 1  ***Obey the law***.
> 2.  Take care of our members.
> 3.  Take care of our employees.
> 4.  ***Respect our suppliers***.
> * * * *
> 5.  Reward our shareholders.

SECOND AMENDED COMPLAINT - 1
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

2.      Costco's "Code of Ethics" is published on Costco's website for the public to view and it is also prominently displayed on the wall in the lobby of Costco's headquarters.

3.      Costco asserts that its employees are immersed in the "Code of Ethics" and that it is purportedly part of Costco's way of doing business and treating its employees, shareholders, and suppliers.

4.      Costco also proclaims that suppliers (like Blackstone) should expect Costco to be honest and ethical.

5.      In addition, Costco emphasizes the importance of "transparency," including specifically that Costco is transparent, and open and honest, with its suppliers (like Blackstone).

6.      Unfortunately, Costco not only seriously failed to be transparent in its dealings with Blackstone, while repeatedly violating its own "Code of Ethics," including by failing to "obey the law" and failing to "respect" Blackstone, but also Costco did so intentionally, willfully, and/or negligently to the substantial detriment to Blackstone.

7.      This dispute involves a more than 15-year business relationship between plaintiff Blackstone (a supplier) who supplied defendant Costco (a retailer) with consumer products for retail to consumers.  During those many years, Blackstone consistently supplied Costco with high-quality and affordable consumer goods, including, most recently, lighted vanity mirrors, personal fans, and oscillating tower fans, which generated well over a hundred million dollars for Costco.

8.      In supplying such products, Blackstone expends substantial time, money, resources, and great care to create the products it supplies to retailers (like Costco).

9.      Blackstone designs and owns the intellectual property regarding the products, packaging, instruction manuals, and related materials, and uses manufacturers, including certain factories in China, to manufacture the products Blackstone has designed for sale to retailers (like Costco) and other outlets.

10.     Over the course of its business relationship with Blackstone, Costco has sold to consumers at its wholesale clubs more than four million units of products supplied by Blackstone,

SECOND AMENDED COMPLAINT - 2
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    resulting in a substantial profit to Costco.

2    11.    In particular, two of Blackstone's most popular products — a 40" tall, slim,

3    oscillating, variable speed and mode tower fan with a remote control (the "Blackstone Tower Fan")

4    and a 13" personal fan (the "Blackstone Personal Fan") — had been consistently achieving

5    exponential sales growth since 2016.

6    12.    Both the Blackstone Tower Fan and Blackstone Personal Fan have been sold by

7    Blackstone under the brand names "Cascade" and "Sunter."

8    13.    Impressed by the ever-growing sales, and eager to sell even more, Costco agreed in

9    May 2018 to purchase from Blackstone approximately 2.5 million Blackstone Tower Fans and in

10   excess of half a million "2-Packs" of Blackstone Personal Fans for the 2019 season (the "2019 Fan

11   Program Agreement").  According to Costco's own internal documents, the sales of Blackstone

12   Tower Fans and Blackstone Personal Fans would be the biggest non-food MVM sales program

13   ever done by Costco and Costco proclaimed that it would make history at Costco.

14   14.    Pursuant to the 2019 Fan Program Agreement, Costco agreed to pay Blackstone

15   more than $70 million.  In turn, Blackstone completed all of the significant work necessary to

16   begin shipments before the end of 2018, Costco issued purchase orders to Blackstone, and

17   Blackstone starting shipping fans to Costco in November 2018 in accordance with the 2019 Fan

18   Program Agreement.

19   15.    Unbeknownst to Blackstone, however, Costco secretly conspired with the agent

20   (*i.e.*, Collin Carpenter ("Carpenter")) of a competing supplier (*i.e.*, Technomate Manufactory, Ltd.

21   ("Technomate")) and its newly-created affiliate (*i.e.*, E2 Limited ("E2")), in order to maximize

22   Costco's own profits.

23   16.    In fact, E2 was intentionally created to work covertly with Costco to supplant

24   Blackstone.

25   17.    Far from the "transparency" Costco purports to pride itself on, and before Costco

26   even canceled the purchase orders that it had already issued to Blackstone (and which Blackstone

27

SECOND AMENDED COMPLAINT - 3
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   was shipping against pursuant to the 2019 Fan Program Agreement), Costco went behind

2   Blackstone's back and contracted directly with Technomate/E2/Carpenter to have Blackstone's

3   fans supplied — without Blackstone's knowledge or consent — directly to Costco, and thereby

4   cutting-out Blackstone from the sale of its own products.

5       18.    Subsequently, Costco refused to honor its 2019 Fan Program Agreement with

6   Blackstone and, ultimately, Costco cancelled the purchase orders it had already issued to

7   Blackstone and for which Blackstone had already completed the substantial work to fulfill,

8   including having already shipped product in accordance with the 2019 Fan Program Agreement.

9       19.    Even worse, the fans that Costco imported, distributed, and/or sold for the 2019

10   season falsely designated such products as being "distributed by" Blackstone, even though Costco

11   had wrongfully contracted directly with Technomate/E2/Carpenter and/or DCI/Homestar.  Among

12   other misconduct, Costco also knowingly and unlawfully utilized Blackstone's customer service

13   information, warranty cards, and UPC numbers.  Indeed, Blackstone is still receiving customer

14   complaints from consumers who purchased falsely-designated Blackstone fans that were

15   manufactured directly for Costco.  And some of those customers have even stated that Costco told

16   them to call Blackstone, despite that the fans were not distributed by Blackstone.

17       20.    Not content with having already exploited Blackstone for Costco's own improper

18   ends during the 2019 season, Costco began selling a knock-off of Blackstone's Tower Fan in the

19   2020 season and again in the 2021 season.  Although Costco has labeled the knock-offs with the

20   name "Sierra Tower Fan" (for the 2020 season) and "OmniBreeze Tower Fan" (for the 2021

21   season), there can be no serious dispute that Costco has infringed Blackstone's intellectual

22   property.   In fact, not only did Costco intentionally copy Blackstone's design of the tower fan,

23   which enjoys trade dress protection, but Costco also intentionally copied Blackstone's product

24   manuals, which are protected by registered copyrights.  Blackstone has and continues to receive

25   customer complaints from consumers who purchased the knock-off fans sold by Costco who

26   believe (and/or have been told by Costco) that those fans were also distributed by Blackstone.

27

SECOND AMENDED COMPLAINT - 4
CASE NO. 2:20-CV-00964-TSZ

21.     In short, Costco has engaged in an extensive scheme and course of conduct by which Costco has (among other claims) breached its agreement with Blackstone, made misrepresentations and omissions, engaged in unfair and deceptive trade practices, tortuously interfered with Blackstone's business relationships and contracts, infringed Blackstone's intellectual property, falsely designated the origin of certain goods, and both deceived the public and unfairly competed with Blackstone.

22.     At the heart of Costco's misconduct is its serious (and intentional) failure to be "transparent" with Blackstone and Costco's willful and/or negligent decisions to repeatedly violate the law and wrongfully *dis*-respect Blackstone — a loyal, dedicated, and trustworthy supplier to Costco for more than fifteen years.  Costco (the bully and Goliath in this case) conspired with Chinese suppliers and their local agent to cut-out Blackstone (the small, family business and David in this case), steal Blackstone's intellectual property, and destroy Blackstone's business — all in the name of profit.

23.     Accordingly, this is an action for breach of contract, breach of implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, tortious interference, violations of the Lanham Act, unfair competition, violation of the Washington Consumer Protection Act, and copyright infringement.

## II.     PARTIES

24.     Plaintiff Blackstone is a Maryland corporation with its principal place of business in Windsor Mill, Maryland.

25.     Defendant Costco is a Washington corporation with its principal place of business in Issaquah, Washington.

## III.     JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C.A. § 1338 (copyrights and Lanham Act), and subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b)

SECOND AMENDED COMPLAINT - 5
CASE NO. 2:20-CV-00964-TSZ

1  (related unfair competition claims) and 28 U.S.C. § 1367 (supplemental jurisdiction).

2      27.     In addition, pursuant to 28 U.S.C. § 1332, this Court also has subject matter

3  jurisdiction because there is complete diversity of citizenship between Blackstone and Costco, and

4  the amount in controversy exceeds $75,000.

5      28.     This Court has personal jurisdiction over Costco because, *inter alia*, Costco is a

6  Washington corporation and has committed tortious acts in the State of Washington, transacted

7  substantial business and has substantial contacts with the State of Washington, and/or conduct (or,

8  at all relevant times, conducted) business in the State of Washington and has purposefully availed

9  itself of the privilege of conducting business in the State of Washington.  Costco has sufficient

10  minimum contacts with the State of Washington to render the exercise of personal jurisdiction

11  over them consistent with the traditional notions of fair play and substantial justice.

12      29.     Among other contacts, Costco is subject to personal jurisdiction in this Court

13  pursuant to the Due Process Clause of the Fourteenth Amendment of the Constitution of the United

14  States based on at least the following: (a) Costco has substantial contacts with the State of

15  Washington and has transacted substantial business in the State of Washington; (b) Costco

16  promoted products to consumers in the State of Washington; (c) Costco committed tortious acts in

17  the State of Washington and/or resulting in harm in the State of Washington; (d) Costco supplied

18  products to consumers and/or sold a significant number of products in the State of Washington;

19  (e) Costco manufactured and/or had manufactured products for sale in the United States, including

20  the State of Washington; (f) Costco manufactured and/or had manufactured products and placed

21  them into the stream of commerce with the intention that they would be purchased by consumers

22  in the State of Washington; (g) Costco imported, delivered, and/or supplied products into the

23  United States for sale in the State of Washington that infringe Blackstone's intellectual property

24  rights; and (h) Costco has purposely directed its activities and has consummated numerous

25  transactions in the State of Washington, and/or has performed acts by which Costco purposely

26  availed itself of the privilege of conducting activities in the State of Washington, thereby invoking

27

SECOND AMENDED COMPLAINT - 6
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    the benefits and protections of the law of the State of Washington.

2        30.    Venue in this Court is proper pursuant to, *inter alia*, 28 U.S.C. § 1391(b) because

3    Costco resides in this judicial district, a substantial part of the events or omissions giving rise to

4    the claims occurred in this judicial district, and/or Costco transacts business or transacted business

5    in this judicial district at the time the causes of action arose.

6        31.    In addition, an arbitrator has already decided that the claims asserted by Blackstone

7    in this action "are not arbitrable."

8                    **IV.    STATEMENT OF FACTS**

9    **A.    Over the Course of More Than Two Decades, Blackstone Made Substantial**
     **Investments in Growing Its Business, Developing Its Products, and Creating Its**
10   **Intellectual Property.**

11       32.    Founded approximately twenty-five years ago, Blackstone designs and markets

12   safe, practical, and affordable consumer goods for sale to major national and international retailers.

13   Such products include, but are not limited to, lighting, mirrors, electronics, games, and fans.

14       33.    Blackstone developed and designed its products through the substantial investment

15   of time, labor, money, industry experience, and other resources.   And Blackstone's intellectual

16   property was created through significant time, effort, and expense marketing and developing

17   Blackstone's products.

18       34.    Blackstone owns and has developed registered and common law intellectual

19   property, including copyright protection and trade dress rights, in connection with (among other

20   intellectual property) the design elements, packaging, and package inserts related to Blackstone's

21   products.

22       35.    For example, Blackstone designed the Blackstone Tower Fan (*i.e.*, a 40" tall, slim,

23   oscillating, variable speed and mode tower fan with a remote control, the Blackstone Personal Fan

24   (*i.e.*, a 13" personal fan), and a lighted vanity mirror (the "Blackstone Vanity Mirror").

25       36.    Through the substantial investment of time, labor, money, industry experience, and

26   other resources over the course of more than two decades, Blackstone has developed a

27

SECOND AMENDED COMPLAINT - 7
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

sophisticated and successful business model by which Blackstone designs the products, packaging, instruction manuals, and related materials, and uses third party manufacturers, including certain factories in China, to manufacture the products Blackstone has designed for sale to retailers and other outlets.

37.     Blackstone has the sole right to supply to retailers (including Costco) certain products that embody Blackstone's intellectual property, including the Blackstone Tower Fan.

38.     Among other intellectual property, the stylized "B" associated with Blackstone's Tower Fan has been filed for trademark registration with the United States Patent and Trademark Office with Registration No. 3,222,542, as well as Registration No. 6,687,249.

39.     Blackstone owns trademark protection for the Cascade brand name, logo, and proprietary alphabet used on the packaging and back of the Blackstone Tower Fan, as well as the remote.  Blackstone's name and logo is also protected.

40.     Blackstone also owns trade dress and copyright protection for the packaging and manuals, as well as trade dress protection for the overall design, the louver system, grill, arched top form, control panel layout, control panel and icons, logo application, cylindrical stock, base, fit, and finish of the Blackstone Tower Fan.

41.     Blackstone also owns trade dress protection for the remote-control design including the "circle and cross" layout, control icons, and logo application.

42.     Blackstone has also timely registered for copyright protection of the manuals associated with its Blackstone Tower Fan.  Specifically, the manuals associated with Blackstone's Tower Fan have been filed for copyright registration with the United States Copyright Office with Registration Nos. TX0008690544, TX0008696259, and TXu002132551 (collectively, the "Copyrighted Works").

**B.     Blackstone Also Made Substantial Investments in Perfecting Its Competitive Edge and Developing Its Business Relationships and Contractual Relations.**

43.     Blackstone has also carefully cultivated its successful brand and reputation in the industry through the substantial investment of time, labor, money, industry experience, and other

SECOND AMENDED COMPLAINT - 8
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

resources over the course of more than two decades.

44.     Based on extensive marketing, promotion, and sales throughout the United States, Blackstone has achieved commercial success with its products.

45.     As a result of the sales, promotion, and marketing by Blackstone, the trade dress of the Blackstone Tower Fan has also developed and acquired secondary meaning to consumers, in that the consuming public has come to associate tower fans bearing such dress with Blackstone.

46.     In addition, through the substantial investment of time, labor, money, industry experience, and other resources, Blackstone has developed significant business relationships with various manufacturers.

6.     For example, before Costco's tortious interference and other misconduct, Blackstone had contracted with various Chinese factories that were represented to be owned by, affiliated with, and/or otherwise controlled through Allen Zhang a/k/a Zhang Lin, including Design Center International, Ltd. and, subsequently, its successor and/or alter ego Home Star International Ltd. ("DCI/Home Star"), as well as Zhejiang Mikia Lighting Co., Ltd. ("Mikia").

47.     As a result of Blackstone's protected intellectual property, unique methods and processes, proprietary modeling and formulas, cultivated relationships, and valuable and exclusive know-how, which were developed by Blackstone through a substantial investment of time and money, Blackstone was able to deliver high quality consumer products at highly competitive price points.

**C.     Costco Did Substantial Business with Blackstone for More Than 15 years, and in May 2018 Costco Agreed to a Fan Program with Blackstone that Would "Make History" at Costco.**

48.     Through the substantial investment of time, labor, money, industry experience, and other resources, Blackstone also developed a significant business relationship with Costco, including the sale of consumer products to Costco for sale in its retail clubs in the United States, and later to other Costco-branded entities in Canada, Mexico, Australia, Taiwan, and Korea.

49.     In fact, for more than 15 years, Blackstone sold lighting products, mirrors,

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   electronics, gaming products, and fans to Costco.  Those sales exceeded over three-and-a-half-

2   million product units sold and accounted for over $200 million in revenue to Blackstone.

3        50.    Blackstone developed and designed a fan program for Costco in 2016 which

4   achieved great success.  Blackstone continued to improve upon and evolve the program for

5   continued success, and sold Costco the program in 2017, 2018, and 2019.

6        51.    For example, Blackstone developed and designed a fan program that involved the

7   sale of the Blackstone Tower Fan and Blackstone Personal Fan that could be marketed to

8   consumers in attractive packaging, either separately or together, at a value that would also be

9   attractive to consumers.

10       52.    Blackstone further refined the fan program to feature the sale of the Blackstone

11  Tower Fan alone and the Blackstone Personal Fan in a "2-pack."

12       53.    Blackstone's design and marketing of the Blackstone Tower Fan and Blackstone

13  Personal Fan achieved superior commercial success in a short period of time through sales by

14  Blackstone to Costco.

15       54.    In fact, the Blackstone Tower Fan and the Blackstone Personal Fan were on track

16  to become (according to Costco's own projections) the biggest multi-vendor mailer ("MVM")

17  program for a non-food item that had ever been done by Costco.  Costco represented that the

18  Blackstone Tower Fan would be featured in Costco's monthly MVM program, and Costco

19  forecasted that it expected to sell 1.6 million units in 25 days.   As described by Costco, given the

20  dollar and unit volume, the program had the attention of senior management at the highest levels.

21  In Costco's own words, it would have "made history" at Costco.

22       55.    Specifically, in May 2018, based on the phenomenal commercial success, Costco

23  agreed to purchase from Blackstone approximately 2.5 million Blackstone Tower Fans and more

24  than 500,000 "2-Packs" of Blackstone Personal Fans for the 2019 season (*i.e.*, the 2019 Fan

25  Program Agreement).

26       56.    Pursuant to the 2019 Fan Program Agreement, Costco agreed to pay Blackstone

27

SECOND AMENDED COMPLAINT - 10
CASE NO. 2:20-CV-00964-TSZ

1    more than $70 million, and shipments were scheduled to begin before the end of 2018.

2         57.    The 2019 Fan Program Agreement is documented by (among other things) the

3    exchange of terms between Blackstone and Costco, an electronic document stored on Costco's

4    internal system that was also shared with Blackstone, the entries in Costco's "BPM" system,

5    Costco issuance of purchase orders to Blackstone, and Blackstone's shipment of fans based on the

6    purchase orders issued by Costco pursuant to the 2019 Fan Program Agreement.

7         58.    Immediately after entering into the 2019 Fan Program Agreement with Costco,

8    Blackstone began the substantial work necessary to implement and execute on the 2019 Fan

9    Program Agreement, including extensive efforts related to the design of the products and

10   packaging, the pricing formulas and modeling, and the manufacturing flow and logistics.

11        59.    In reliance on the 2019 Fan Program Agreement, and in order to supply the products

12   to Costco for the 2019 Fan Program Agreement, Blackstone also contracted with certain factories,

13   including DCI/Home Star.

14        60.    DCI/HomeStar and Mikia agreed to manufacture and sell to Blackstone the

15   Blackstone Tower Fans and Blackstone Personal Fans for the 2019 Fan Program Agreement and

16   affirmed that agreement in writing at a meeting in August 2018, where representatives of

17   Blackstone, DCI/Home Star, and Mikia, including Zhang Yong (President of Mikia), met in person

18   to discuss (among other things) details relating to the manufacture and sale to Blackstone of the

19   Blackstone Tower Fans and Blackstone Personal Fans for Blackstone to supply to Costco for the

20   2019 Fan Program Agreement.

21        61.    At that meeting, DCI/Home Star and Mikia agreed in writing that, among other

22   things, Blackstone was entitled to a $2.5 million retainer and that DCI/Home Star and Mikia would

23   manufacture and sell the Blackstone Tower Fans and Blackstone Personal Fans to Blackstone in a

24   written agreement translated into English and Chinese and signed by the parties (the "2018

25   Maryland Contract").

26        62.    Pursuant to the 2018 Maryland Contract, Mikia and DCI/Home Star agreed to

27

SECOND AMENDED COMPLAINT - 11
CASE NO. 2:20-CV-00964-TSZ

manufacture the Blackstone Tower Fans and Blackstone Personal Fans for sale by DCI/Home Star to Blackstone for exclusive resale to Costco.

63.     Costco knew that Blackstone was utilizing DCI/Home Star, and that a portion of the fans for the 2019 Fan Program Agreement would also be manufactured by Mikia.  In fact, prior to accepting shipments from Blackstone, Blackstone identified the factories that would be utilized to manufacture the fans for the 2019 Fan Program Agreement, and Costco accepted those factories. Costco had also previously audited both factories, which had been manufacturing Blackstone products for several years and identified internally how much product would be coming from each respective factory.

64.     Ultimately, in furtherance of its commitment to the 2019 Fan Program Agreement — and after Blackstone had already completed substantial work in performance of, and in reliance on, the 2019 Fan Program Agreement — Costco began issuing purchase orders to Blackstone.

65.     For example, by October 3, 2018, Costco had already issued more than 1000 purchase orders to Blackstone for Blackstone Tower Fans, totaling more than 1.5 million units and Costco planned to issue additional purchase orders in the coming months that would bring the total amount of the Blackstone Tower Fan to over 2.5 million units pursuant to the 2019 Fan Program Agreement.

66.     By December 17, 2018, Costco had also already issued more than 100 additional purchase orders for Blackstone Personal Fans, totaling more than 350,000 units and Costco planned to issue additional purchase orders in the coming months that would bring the total amount of the 2-packs of the Blackstone Personal Fan to over 500,000 units pursuant to the 2019 Fan Program Agreement.

7.     In turn, Blackstone issued purchase orders to DCI/Home Star for the manufacturing of 2.5 million Blackstone Tower Fans, approximately 1.7 million of which were designated to be manufactured by Mikia and the other 800,000 fans by DCI/Home Star.  Pursuant to the 2018 Maryland Contract, DCI/Home Star in turn forwarded the invoices to Mikia for the Blackstone

SECOND AMENDED COMPLAINT - 12
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   Tower Fans that Mikia had agreed to manufacture for Blackstone.

2       67.   Blackstone also issued purchase orders to DCI/Home Star for the Blackstone

3   Personal Fans.

4       68.   Pursuant to the 2018 Maryland Contract, Mikia and DCI/Home Star agreed to

5   manufacture the Blackstone Tower Fans and Blackstone Personal Fans for sale by DCI/Home Star

6   to Blackstone for exclusive resale to Costco.

7       69.   Pursuant to and in reliance on the 2019 Fan Program Agreement, Blackstone had

8   already began shipping fans to Costco in November 2018.  And by the beginning of December

9   2018, approximately 275,000 Blackstone Tower Fans had already been manufactured for

10  Blackstone.

11  **D.   Costco Tortiously Interfered with Blackstone's Contractual Relations, Made Numerous Misrepresentations to Blackstone, and Fraudulently Concealed Material Information From Blackstone.**

12

13      70.   Despite its 2019 Fan Program Agreement with Blackstone, and knowing that

14  Blackstone had already invested substantial time, money, and other resources (and had, in fact,

15  already started shipping fans pursuant to the 2019 Fan Program Agreement), Costco conspired

16  with Carpenter (*i.e.*, an agent), Technomate (*i.e.*, a competing supplier), and E2 (*i.e.*, its newly-

17  created affiliate).

18      71.   For example, at least as early as November 5, 2018, but unbeknownst to Blackstone,

19  Costco began secretly communicating directly with Technomate/E2/Carpenter.  Instead of

20  honoring the 2019 Fan Program Agreement with Blackstone by refusing to deal directly with

21  Technomate/E2/Carpenter, Costco continued to conspire with Technomate/E2/Carpenter behind

22  Blackstone's back and tortiously interfered with Blackstone's contractual relationships with the

23  factories.

24      72.   By eliminating Blackstone from the equation and buying through

25  Technomate/E2/Carpenter, Costco sought to improve its profit margin on the sale of Blackstone's

26  fans.  Costco was also motivated to cut Blackstone out, so that Costco could restructure the fan

27

SECOND AMENDED COMPLAINT - 13
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1  program in order to take advantage of significant savings on tariffs.

2      73.    Ultimately, in blatant disregard of Costco's commitments under the 2019 Fan

3  Program Agreement, and unbeknownst to Blackstone, Costco secretly contracted directly with

4  Technomate/E2/Carpenter before Blackstone was forced to execute a limited "Intellectual

5  Property License Agreement" that was not signed until January 11, 2019 and which expired by its

6  terms no later than November 15, 2019 (the "Expired License").

7      74.    In fact, before Blackstone was forced to execute the Expired License and *without*

8  *disclosing to Blackstone*, Costco signed a "Global Import Supplier Agreement" with E2 dated

9  November 29, 2018.  Costco also signed a "Vendor Purchase Program Agreement" with E2, which

10  identified Carpenter as the "Representative," before Blackstone was forced to execute the Expired

11  License and *without disclosing to Blackstone*.  Before Blackstone was forced to execute the

12  Expired License and *without disclosing to Blackstone*, Costco also approved the "Item Agreement"

13  for Technomate/E2/Carpenter to supply Blackstone's fans directly to Costco, which was based

14  entirely on the substantial time, money, and other resources that Blackstone had already invested

15  pursuant to and in reliance on the 2019 Fan Program Agreement.

16      75.    Moreover, by as early as December 13, 2018, Costco had already decided that

17  Blackstone would no longer be the supplier for the Blackstone Tower Fan.  And by December 20,

18  2018, which was also before Blackstone was forced to execute the Expired License and *without*

19  *disclosing to Blackstone*, Technomate/E2/Carpenter was described as the vendor working to

20  supply, ship, process and overall keep the ball rolling for the Blackstone Tower Fans.

21      76.    Before Blackstone was forced to execute the Expired License and *without*

22  *disclosing to Blackstone*, Costco also issued purchase orders to Technomate/E2/Carpenter to

23  supply Blackstone's fans directly to Costco.  In fact, Technomate/E2/Carpenter already had

24  Blackstone's fans on the water and had already made more than 60 shipments, totaling more than

25  100,000 units, before Blackstone was forced to execute the Expired License and *without disclosing*

26  *to Blackstone*.  According to Costco, before Blackstone was forced to execute the Expired License

27

SECOND AMENDED COMPLAINT - 14
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    and *without disclosing to Blackstone*, Technomate/E2/Carpenter was working in concert with

2    Costco.

3           77.    Astonishingly, and unbeknownst to Blackstone, Costco even agreed to purchase

4    from Technomate/E2/Carpenter approximately 300,000 units that had previously been rejected by

5    Blackstone in 2018 because they were defective.  Those defective units were shipped at Costco's

6    direction in 2019 under cancelled purchase order numbers, improperly utilizing Blackstone's

7    product manuals, and wrongfully bearing Blackstone's customer service information, and (upon

8    information and belief) were sold in their defective state.

9           78.    Instead of being transparent with Blackstone, on November 6, 2018, Costco

10   (through Sierra Lowe) represented to Blackstone that Costco had supposedly received information

11   from a "very reputable vendor" that Blackstone allegedly owed money to Mikia.  But any such

12   representations regarding monies allegedly owed to Mikia were false, and Blackstone expressly

13   informed Costco that Mikia was lying and was not owed anything and that Blackstone had

14   evidence to substantiate its position.  In fact, Blackstone's contractual relationship with Mikia for

15   the manufacture of fans was the 2018 Maryland Contract. Blackstone did not have a payment

16   relationship with Mikia.  Rather, Mikia's payment relationship was with DCI/Home Star, which

17   Blackstone made clear to Costco.

18          79.    When Blackstone confronted Costco regarding the false allegations, Costco

19   (through Jack Weisbly) repeatedly represented that it would provide to Blackstone the alleged

20   "unpaid" Mikia invoices, so that Blackstone could then provide to Costco the proof of payment.

21   In fact, Costco said that if Blackstone provided such proof, Costco would *not* do business with

22   Mikia.  However, despite several attempts by Blackstone to follow-up with Costco (including with

23   Jack Weisbly) to obtain the allegedly "unpaid" invoices, Costco instead chose to ignore and never

24   provided the alleged "unpaid" Mikia invoices.  In short, Costco never provided Blackstone with

25   the opportunity to disprove the false allegations, which Blackstone was (and still is) easily able to

26   do.

27

SECOND AMENDED COMPLAINT - 15
CASE NO. 2:20-CV-00964-TSZ

80.    Before Blackstone was forced to execute the Expired License, in November and December 2018, Costco (through Sierra Lowe, Michelle Rado, Lester Cox, and Jack Weisbly) also falsely represented to Blackstone that the so-called "very reputable vendor" was merely the "conduit" of information concerning the alleged monies owed to Mikia.   In furtherance of its fraudulent inducement to force Blackstone to execute the Expired License, Costco misprepresented that it allegedly received information from a mere "conduit" and Costco withheld that it was dealing directly with Technomate/E2/Carpenter.

81.    Costco also failed to disclose that it had already contracted with E2 in November 2018, a newly-created affiliate of Technomate, who was also "represented" by Carpenter.  Instead, in addition to the fraudulent omissions, in November 2018 through January 14, 2018, Costco (through Sierra Lowe, Michelle Rado, Lester Cox, and Jack Weisbly) also falsely misprepresented that it was engaging with Mikia.

82.    The timing of the creation of E2 is also particularly troubling.  E2 did not even *exist* until it was formed on or about October 30, 2018, for the specific purpose of working with Costco to sell Blackstone's fans.  And by November 29, 2018 — and before Costco even canceled the purchase orders that it had already issued to Blackstone — Costco had already contracted with Technomate/E2/Carpenter to supply Blackstone's fans directly to Costco, without Blackstone's knowledge or consent.   Costco then issued tens-of-millions of dollars of purchase orders to E2 for the biggest non-food MVM sales program ever done by Costco.  In other words, Costco conspired with an entity that had existed for less than a month on a sales program that was scheduled to make history at Costco.

83.    Moreover, until recently (and despite a prior Order granting a motion to compel in the King County Superior Court) Costco continued to wrongfully conceal the identity of the so-called "very reputable vendor."  However, Costco has now finally admitted that the so-called "very reputable vendor" was Technomate.

84.    Previously, on July 8, 2020, the King County Superior Court granted Blackstone's

SECOND AMENDED COMPLAINT - 16
CASE NO. 2:20-CV-00964-TSZ

1 motion to compel and ordered Costco to (among other things) identify the "very reputable vendor,"

2 including both "defendants John Doe and Doe Entity."  In response to the Order, Costco (through

3 its attorney) originally *mis*-represented that "Home Star was the 'very reputable vendor.'"  When

4 pressed to also identify the "John Doe" as required by the Court's Order, Costco (through its

5 attorney) then *mis*-represented that "Doug Leady, of Home Star, reached out to Costco."  A month

6 later, Costco (through its attorney) retracted its statements regarding "Home Star" and "Doug

7 Leady," and instead represented that "Collin Carpenter reached out to Costco and referenced issues

8 between Blackstone and its existing vendors."  However, despite the Court's Order, Costco refused

9 to also identify the "Doe Entity," which was recently revealed by Costco to be Technomate.

10  85. Contrary to Costco's fraudulent misrepresentations to Blackstone before

11 Blackstone was forced to execute the Expired License, Costco has since admitted years later that

12 Carpenter — the "agent" and "representative" of Technomate — was *not* merely a "conduit" of

13 information, but rather Technomate, E2, and Carpenter were involved the whole time.

14  86. Similarly, Costco admitted that, not only were Technomate, E2, and Carpenter

15 involved in 2019 fan season, but Technomate, E2, and Carpenter remained involved for the 2020

16 fan season when Costco begin selling knock-off fans re-named as the "Sierra" tower fan.

17  87. Despite Costco's repeated failures to disclose to Blackstone, Costco has also

18 admitted — again, years later — that the involvement of Technomate, E2, and Carpenter was

19 critically *material* to Costco.

20  88. As described above, Costco has also emphasized the importance of transparency,

21 including specifically the identity of those involved in the supply and manufacturing chain.  And

22 Costco has admitted that "transparency," including by Costco, is materially important.

23  89. Before Blackstone was forced to execute the Expired License, and at least as early

24 as December 4, 2018, Blackstone also expressly informed Costco that "the identity of the other

25 vendor is material to Blackstone's participation in the program."  However, although it was

26 material to Costco and despite that Costco also knew that it was also material to Blackstone, Costco

27

SECOND AMENDED COMPLAINT - 17
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

*never* disclosed to Blackstone that it was dealing with Technomate/E2/Carpenter before Blackstone was forced to execute the Expired License.  Rather, at all relevant times in November 2018 through January 14, 2019 before Blackstone was forced to execute the Expired License, Costco repeatedly stated Costco (through Sierra Lowe, Michelle Rado, Lester Cox, and Jack Weisbly) that it was working directly with Mikia, despite knowing otherwise by (among other things) having signed contracts with Technomate/E2/Carpenter and issuing purchase orders to Technomate/E2/Carpenter.

90.     In fact, the first time Blackstone even heard of E2 was *after* Blackstone was forced to execute the Expired License.   But even then, Costco continued to lie and conceal the truth.

91.     Specifically, on January 15, 2019, Costco ultimately provided a copy of its "Global Import Supplier Agreement" with E2.  When confronted by Blackstone with questions regarding E2 on January 17, 2019, Costco (including through Sierra Lowe and Michelle Rado) represented "It's Mikia – E2 is Mikia."  And Costco (again) failed to disclose the involvement of Technomate and Carpenter.  Nor did Costco disclose that E2 was not, in fact, Mikia. Even when Blackstone requested a copy of its "Vendor Purchase Program Agreement" with E2, which would have identified Carpenter as the "Representative," Costco refused to provide the agreement to Blackstone.

**E.**     **Costco Also Conspired to Unfairly Compete with Blackstone, Threatened Blackstone, and Inflicted Undue Duress on Blackstone in Order to Fraudulently Induce Execution of the Expired License**.

92.     In addition to the omissions, half-truths, and misrepresentations, Costco also conspired to unfairly compete with Blackstone and facilitated the factories to breach their contracts with Blackstone.

93.     For example, rather than inform Blackstone of its secret plans with Technomate/E2/Carpenter, Costco strung Blackstone along and used Blackstone to gain valuable information concerning the fan program designed by Blackstone (including, among other things, Blackstone's terms with the factories and pricing structures), so that Costco could use the

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

information to deal directly with the Technomate/E2/Carpenter and increase Costco's profits.

94.     Based on Costco's misrepresentations and omissions, Blackstone also expended additional time, money, and labor in an effort to continue executing on the 2019 Fan Program Agreement, while Costco was — unbeknownst to Blackstone — frustrating Blackstone's ability to do so.   Blackstone negotiated with the factories, provided additional funds to the factories (as well as offering a line of credit), and repeatedly attempted to obtain the factories' commitments to honor their agreements with Blackstone.

95.     Ultimately, because Costco was secretly dealing with Technomate/E2/Carpenter, and had also engaged directly with representatives of DCI/Home Star, the factories (*i.e.*, both Mikia and DCI/Home Star) ceased communicating with Blackstone and breached their contracts with Blackstone.   In short, as a result of Costco's improper actions in dealing directly with the factories which Blackstone had contracted with (while concealing such information from Blackstone) the factories had no reason to work with Blackstone anymore, because they now had a direct line to Blackstone's customer (*i.e.*, Costco).

96.     Moreover, Costco also threatened Blackstone and inflicted undue duress on Blackstone in order to fraudulently induce execution of the Expired License.

97.     Costco's threats began immediately in the first minutes of Blackstone's very first call with Costco following Costco's communication with the so-called "very reputable vendor."

98.     For example, on November 15, 2018, Costco (through Jack Weisbly) ordered Blackstone to put all its cards on the table if it ever wanted to walk through the doors of Costco again.  In November 2018 through the execution of the Expired License, Costco (through Sierra Lowe, Michelle Rado, Lester Cox, and Jack Weisbly) also threatened Blackstone that Costco was going to do the 2019 fan program with or without Blackstone.

99.     As a result of Costco's extreme duress and threats, Blackstone felt like it had a gun to its head.

100.     Based on Costco's extreme duress and threats that Costco would proceed with or

SECOND AMENDED COMPLAINT - 19
CASE NO. 2:20-CV-00964-TSZ

1    without Blackstone, Blackstone also felt like it no choice.

2       101.   Blackstone did not want to execute the Expired License, however, Costco forced

3    Blackstone to sign by inflicting extreme duress.  Knowing what it knows today — only after

4    Costco was compelled or otherwise required under law to divulge such information which it

5    otherwise resisted providing to Blackstone for years — Blackstone would *not* have executed the

6    Expired License.  However, at the time, Costco forced Blackstone to sign by inflicting extreme

7    duress, including Costco's threats that it was going to move forward with the 2019 fan program

8    with or without Blackstone, threating Blackstone to the point that it felt like it had a gun to its

9    head, and leaving Blackstone with no other choice but to acquiesce to Costco's demands.

10      102.   In an effort to further exert its control over Blackstone, Costco even had the

11   audacity to demand that Blackstone waive its rights, so that Costco could continue to benefit from

12   Blackstone's work while giving Blackstone nothing in return.

13      103.   Moreover, Costco also increased the pressure by withholding monies due to

14   Blackstone on prior sales programs and threatening to cancel upcoming sales programs.  Costco

15   also repeatedly threatened that, if Blackstone did not agree to Costco's demands regarding the

16   terms of the Expired License, then Costco would end its relationship with Blackstone and Costco

17   would proceed without Blackstone.  Blackstone later found out that Costco did not have any

18   intention of continuing its relationship with Blackstone.  Indeed, unbeknownst to Blackstone,

19   Blackstone had been internally "blacklisted" at Costco.

20      104.   Ultimately, based on Costco's misconduct, Costco effectively prevented

21   Blackstone from enforcing its contractual rights with the factories in time for the 2019 season.

22   There was no opportunity for Blackstone to repair its relationship with the factories and also no

23   opportunity for Blackstone to pursue business with other factories and/or retailers for the 2019

24   season.

25      105.   In fact, Costco also improperly encouraged, caused, and/or aided in DCI/Home

26   Star's wrongful pursuit of baseless claims against Blackstone.  Costco also further threatened

27

SECOND AMENDED COMPLAINT - 20
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    Blackstone for having attempted to defend its intellectual property and other rights.

2          106.    Under extreme duress, believing it had no alternative, based on Costco's

3    misrepresentations and omissions to Blackstone, and in an effort to mitigate its damages,

4    Blackstone executed the Expired License.

5          107.    The Expired License was not signed by Costco until January 11, 2019, and then

6    subsequently signed Blackstone.  Under the Expired License, Costco was granted a limited and

7    narrow license in relation to the Blackstone Tower Fan.  The Expired License was also expressly

8    limited to a "term of one (1) year."

9          108.    In November 2018 through the execution of the Expired License, Costco (through

10   Sierra Lowe, Michelle Rado, Lester Cox, and Jack Weisbly) had also led Blackstone to believe

11   that the Expired License was merely a "one-off" solution to a short-term problem to address the

12   circumstances of the 2019 fan program, and that Costco would continue doing business with

13   Blackstone in the long-term *if* Blackstone agreed to the Expired License.   Accordingly, based on

14   the misrepresentations and omissions, and under extreme duress, Blackstone accommodated

15   Costco in order to continue doing business with Costco.

16         109.    However, despite having coerced Blackstone to enter into the Expired License,

17   based on the repeated representations that Costco would continue doing business with Blackstone

18   *only if* it executed the Expired License (among other misrepresentations and omissions), Costco

19   admitted years-later that it never intended to do further business in its retail clubs (in the United

20   States) with Blackstone.

21   **F.    In Addition to the Omissions Regarding Technomate/E2/Carpenter and Undue
          Duress, Costco Also Made Several Misrepresentations in the Expired License.**

22

23         110.    In its effort to induce Blackstone to execute the Expired License, Costco also made

24   several misrepresentations in the agreement itself.  For example, Costco "agree[d] that the

25   standards for the quality of products … shall be at least equivalent to the standard of products

26   established by Costco, including without limitation QA testing and production protocols

27   established by Costco for the manufacture of the Licensed Products."  But Costco has admitted

SECOND AMENDED COMPLAINT - 21
CASE NO. 2:20-CV-00964-TSZ

1  (among other things)  that it knew — before the Expired License was executed and unbeknownst

2  to Blackstone — that the fans already on the water did *not* comply with the QA testing and

3  production protocols, as well as other Costco requirements.

4      111.   Among other requirements, Costco also agreed that "Costco shall deliver to

5  Blackstone copies of … Costco's Purchase Orders issued to each of Costco's vendors for the

6  Licensed Products within thirty (30) days of issuance" and "shipping documents for the Licensed

7  Products, including commercial invoices and packing lists, within thirty (30) days of receipt by

8  Costco."  But only after Blackstone executed the Expired License did Costco admit that it was not

9  possible to provide such information.  In fact, shortly after Blackstone was forced to execute the

10 Expired License, Costco (including through Sierra Lowe and Michelle Rado) admitted during a

11 call on January 17, 2019 that Costco was not actually able to comply with its various requirements

12 in the Expired License.

13     112.   Costco also expressly agreed that "Costco shall provide an item number and UPC

14 number for the Licensed Products manufactured by Costco's vendors … for the Licensed Products

15 and shall identify its purchases of Licensed Products as to each such number and Costco's vendor

16 for the Licensed Products."  But before the Expired License was executed, Costco knew that the

17 item number and/or UPC number would not be changed on some fans.  Costco also knew that that

18 its system does not have a way to track when the same item numbers, UPC number, and/or

19 purchase order numbers are utilized, despite having reassured Blackstone prior to executing the

20 Expired License that they could in fact do so.

21     113.   Among other representations and warranties, Costco also "represent[ed] and

22 warrant[ed] that, as of the Effective Date of this [License] Agreement, Costco plans to and will be

23 the importer of record for the Licensed Products under this [License] Agreement."  But contrary

24 to its representations in the Expired License, Costco knew that hundreds of thousands of fans were

25 falsely labeled as "Distributed by: Blackstone."

26     114.   Costco also expressly "acknowledge[d] and agree[d] that [Blackstone] … shall

27

SECOND AMENDED COMPLAINT - 22
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

have no responsibility for any claims related to product liability, personal injury, defects, customer service or other liability related to the sale of the Licensed Products." But before the Expired License was executed, Costco knew that the fans incorrectly included Blackstone's customer service information and warranty cards.  Numerous consumers have reported to Blackstone that Costco has directed them to call Blackstone rather than the vendor that Costco knew to have supplied Costco the falsely-labeled products.

115.    In response to the repeated notice provided by Blackstone, Costco nonetheless continued to sell fans that falsely, improperly, and without authorization included "Distributed by: Blackstone," utilized Blackstone's customer service email and phone number, and contained Blackstone's warranty cards.  Costco was well-aware from the beginning that there were numerous problems concerning the use of those items.  In its zeal to increase its own profits, and to the continued detriment of Blackstone, however, Costco plowed ahead.   In fact, shortly after Blackstone was forced to execute the Expired License, Costco admitted that it was not actually able to comply with its various requirements in the Expired License.

**G.    During the 2019 Season, Costco Also Misappropriated Blackstone's Proprietary Information, Falsely Designated the Origin of Certain Products, and Misrepresented the Customer Service and Warranty Responsibilities of the Fans.**

116.    In addition to breaching the 2019 Fan Program Agreement, Costco also misappropriated Blackstone's unique methods and processes, proprietary modeling and formulas, and valuable and exclusive know-how.

117.    For example, Costco conspired with Technomate/E2/Carpenter to use (among other of Blackstone's proprietary information) the Cascade-brand, packaging, product design, pallet optimization, pricing, tooling, and manufacturing logistics.

118.    Among other wrongful conduct, Costco also improperly utilized proprietary and/or confidential information regarding Blackstone's business relationship with DCI/Home Star and Mikia, including without limitation Blackstone's purchase orders for the Blackstone Tower Fans and Blackstone's invoicing information.

SECOND AMENDED COMPLAINT - 23
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

119.   Additionally, certain of the fans that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar were also falsely, wrongfully, improperly, and without authorization designated as distributed by Blackstone, listed Blackstone's customer service information, and utilized Blackstone's warranty cards and UPC number.

120.   For example, the following false statement was included on the packaging, manuals, and molding of certain fans that have been sold at Costco outlets:

> Distributed By:
> Blackstone International Ltd.
> 2018 Baltimore Drive
> Baltimore, MD 21244
> USA
> Made in China

121.   However, the fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar were *not* "distributed by" Blackstone.

122.   Blackstone's customer service phone number and email address was also stamped on the packaging, printed in the user manuals, and embedded on the bottom of the product itself.

123.   However, Costco did *not* have any right to use Blackstone customer service information on any of the fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

124.   The fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar also utilized Blackstone's warranty cards.

125.   However, Blackstone does *not* have warranty responsibility for the fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

126.   In addition, Costco used Blackstone's UPC number on certain of the fans that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

127.   However, Blackstone never gave Costco permission to use Blackstone's UPC number.

128.   Costco's numerous acts of false designation were knowing, intentional, and willful. Costco knowingly and intentionally labeled certain fans as "distributed by" Blackstone.  Costco

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   Costco knowingly and intentionally utilized Blackstone's customer service information. Costco
2   knowingly and intentionally utilized Blackstone's warranty cards.  Costco also knowingly and
3   intentionally utilized Blackstone's UPC number.

4   129.   Costco's wrongful and improper conduct has caused significant customer
5   confusion regarding the origin of certain products, as well as confusion regarding customer service
6   and warranty responsibilities for the fans.

7   130.   For example, Blackstone has received warranty cards from Costco members for
8   fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.   But
9   Blackstone has no warranty responsibility for such products and never authorized Costco to sell
10   products with Blackstone's warranty cards.

11   131.   Blackstone has also received complaints through its customer service phone
12   numbers and customer service email from consumers who purchased fans from Costco that were
13   sold directly to Costco by Technomate/E2/Carpenter and/or DCI/Homestar.  But Blackstone has
14   no responsibility for such products.

15   132.   For example, the following is an email exchange with a consumer who purchased
16   a fan with the model number MKTF0001, which is a fan sold directly to Costco by
17   Technomate/E2/Carpenter:

18
19
20
21
22
23
24
25
26
27

SECOND AMENDED COMPLAINT - 25
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

**From:** [redacted]
**Sent:** Friday, April 17, 2020 12:27 PM
**To:** Customer Service
**Subject:** RE: Fan Support

This is not the best customer service. Thanks for not honoring the warranty and passing the buck and sending the customer on a goose chase. I reached out to E2 limited and they are not able to replace the item since according to them Blackstone did not provide any replacement fans, just limited parts. I absolutely will take this up with Costco and anticipate I'll get much better service and consideration. This further gives me pause to know why companies offer a warranty in the first place if they have no intention of honoring it whether they are a vendor or not. That frankly should not be a concern for a customer who is buying your product.

Sent from Mail for Windows 10

**From:** Customer Service
**Sent:** Thursday, April 16, 2020 8:42 AM
**To:** [redacted]
**Subject:** Fan Support

Thank you for contacting Blackstone International. Unfortunately, we are not able to assist with your fan because we are no longer the vendor for this item. Please contact Costco or the store purchased directly to resolve any issue with your fan. The two new vendors are below depending on which PO# is located on the bottom of the base. It would be best to contact Costco and they will provide the correct vendor for your fan to provide support.

Thanks

Customer Service
Blackstone International

New Vendor: E2 Limited
Fansupport@1800acs.com
1888-849-4079 phone number

HomeStar International
Customerservice@home-starltd.com
800.571.3429

### Campaign: Blackstone International Customer Service-English

| Question | Answer |
|---|---|
| FirstName | [redacted] |
| LastName | [redacted] |
| PhoneNumber | [redacted] |
| Email | [redacted] |

SECOND AMENDED COMPLAINT - 26
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

| | |
|---|---|
| Address1 | ██████████████ |
| Address2 | |
| City | ████████ |
| State | |
| ZipCode | ████ |
| CallType | Cascade 40 inch Fan |
| HelpCallerCombo | Yes |
| ModelNumber | MKTF0001 |
| NeedReplacement | Yes |
| PONumber | N/A |
| ReasonWhyExist | The caller stated that he has called several times in reference his fan is not working. Urgent. |
| TroubleshootCombo | The Fan is not Turning On (No Power) |
| WhenPurchased | January 2020 |
| WherePurchased | Costco |

Call Result: Issue Not Resolved Needs Follow Up
ANI: 210-428-3270

TeleDirect Call Centers
www.teledirect.com

133.   Such   false   representations   regarding   customer   service   and   warranty responsibilities, and false designation of origin of the fans, is part of Costco's apparent attempt to injure Blackstone and its reputation.   For example, the following is an example of another email exchange with an angry consumer of a fan Costco did not purchase from Blackstone:

**Sent:** Thursday, June 11, 2020 6:20 PM
**To:** Customer Service <customerservice@blackstoneltd.com>
**Cc:** ██████████
**Subject:** Re: Fan Support
**Importance:** High

This is unacceptable
The instruction manual specifically states DO NOT return to place of purchase
This product was ultimately purchased from Blackstone International and should honor the warranty. If Blackstone International is no able to replace with the warrantied product a replacement should be sent as a substitution
DO I NEED TO ASK THE BBB TO GET INVOLVED
please reply ASAP
Thank you

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

----- Original Message -----
From: Customer Service <customerservice@blackstoneltd.com
To: ████████████████████████
Sent: Tue, 09 Jun 2020 11:48:32 -0400 (EDT)
Subject: Fan Support

Thank you for contacting Blackstone International. Unfortunately, we are not able to assist with your fan because we are no longer the vendor for this item. Please contact
Costco or the store purchased directly to resolve any issue with your fan or replacement parts. The two new vendors are below depending on which PO# is located on the bottom of the base. It would be best to contact Costco or the store purchased and they will
provide the correct vendor for your fan to provide support. If you have any trouble, please request a manager to assist you with your fan.

Thanks

Customer Service
Blackstone International

New Vendor: E2 Limited

Fansupport@1800acs.com
1888-849-4079 phone number

HomeStar International
Customerservice@home-starltd.com
800.571.9429

**Campaign: Blackstone International Customer Service-English**

| Question | Answer |
|---|---|
| FirstName | ████ |
| LastName | ████ |
| PhoneNumber | ████████ |
| Email | ████████████ |
| Address1 | ████████ |
| Address2 | |
| City | ████ |
| State | ██ |
| ZipCode | |
| CallType | Cascade 40 inch Fan |
| ComboFanIssue | The caller stated that the oscillation is not working but the light is on. |
| HelpCallerCombo | Yes |
| ModelNumber | 0001TF40-18 |
| NeedReplacement | Yes |
| PONumber | 006417 |
| ReasonWhyExist | The caller stated that the oscillation is not working but the light is on. He also called on Friday and has not herad back from anyone. Would prefer a call back. |
| TroubleshootCombo | All Other Issues |
| WhenPurchased | 08/2019 |
| WherePurchased | Costco |

Call Result: Issue Not Resolved Needs Follow Up

ANI: 651-644-3040

TeleDirect Call Centers

SECOND AMENDED COMPLAINT - 28
CASE NO. 2:20-CV-00964-TSZ

134. And the following is yet another example of an email exchange with another angry consumer of a fan Costco did not purchase from Blackstone:

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Wednesday, May 5, 2021 4:02:25 PM
**To:** Customer Service <customerservice@blackstoneltd.com>
**Subject:** RE: Cascade Fan with remote control

Thanks for your reply. It's now out with the rest of the trash along with the garbage.
Will do a media review warning American public about this cheap trash item and your very unethical company.

On May 5, 2021 4:33 AM, Customer Service <customerservice@blackstoneltd.com> wrote:

Thank you for contacting Blackstone International. Unfortunately, we are not able to assist with your fan because we are no longer the vendor for this item. Please contact Costco or the store purchased directly to resolve any issue with your fan or replacement parts. The two new vendors are below depending on which PO# is located on the bottom of the base or the fan box. It would be best to contact Costco or the store purchased and they will provide the correct vendor for your fan to provide support. If you have any trouble, please request a manager to assist you with your fan.

Thanks

Customer Service

Blackstone International

New Vendor: E2 Limited

Fansupport@1800acs.com

1888-849-4079 phone number

HomeStar International

Customerservice@home-starltd.com

800.571.3429

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Sent:** Tuesday, May 04, 2021 3:51 PM

**To:** Customer Service <customerservice@blackstoneltd.com>

**Subject:** Cascade Fan with remote control

To whom it may concern,

We have a cascade fan which we purchased a year ago from Costco.

It has worked very well until today. It makes the beep sound (as normal) when it is plugged in but does nothing else.

I have looked underneath the unit for a serial number etc. but it has none that I can see. I does though have a paper sticker saying date of manufacture 2019.

I believe we registered the unit when we purchased it, if so it will be under the name of :-

▮▮▮▮▮▮▮▮▮▮▮▮

OUR ADDRESS ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

Phone number ▮▮▮▮▮▮

Please advise, do I take it back to Costco or do you service it.

Thank you

135.    Indeed, as evidenced by the substantial number of similar customer complaints regarding fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar, consumers are clearly confused about the origin of the fans.

SECOND AMENDED COMPLAINT - 30
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

136.     Numerous consumers have also reported to Blackstone that they were directed to call Blackstone rather than Costco.

137.     For example, as described in the following email exchange, the customer was referred to Blackstone to address problems with a fan that Costco did not purchase from Blackstone:

| | |
|---|---|
| **From:** | ███████████ |
| **To:** | Customer Service |
| **Subject:** | Fwd: Costco Shopping History -- ████████ |
| **Date:** | Tuesday, April 21, 2020 12:59:43 PM |
| **Attachments:** | Costco Shopping History -- ███████.pdf |

I purchased two Cascade tower fans from costco last year. One of them stopped working a few weeks back. The customer service at costco suggested that I contact the manufacturer to see if you can resolve given the product is still under warranty.

I am attaching the receipt, I understand it is still under 1 year warranty as of today (Purchased on 4/28/19)

Can you please help resolve this?

Thank you

███████████████

---------- Forwarded message ---------
From: ███████████ <███████████@costco.com>
Date: Tue, Apr 21, 2020 at 12:51 PM
Subject: Costco Shopping History -- ████████
To: ███████████

Attached is the receipt request from 4/21/2020.

Thank you,

--
███████████
Membership Services Agent
Corporate Member Service Center
P: ███████████   F: ███████████

138.     Among other serious concerns, this is another example of the reputational damage

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    to Blackstone.

2    139.    Blackstone has also received several reports of malfunctioning fans that Costco did

3    not purchase from Blackstone, which raise questions about the quality of these products.  But

4    Blackstone has no responsibility for such malfunctioning fans.

5    **H.    After the Expired License was Expired, Costco Also Blatantly Stole Blackstone's**

6    **Intellectual Property, Including Infringing Blackstone's Copyrights and Trade Dress,**
     **and Unlawfully Sold (and Continues to Sell) Knock-Offs of Blackstone's Products.**

7    140.    In addition to Costco's misconduct for the 2019 season, Costco also infringed

8    Blackstone's intellectual property after the Expired License expired.

9    141.    As Costco expressly acknowledged and agreed in the Expired License, Blackstone

10   owns and has developed federally registered and common law intellectual property, including

11   copyright protection and trade dress rights, in connection with (among other intellectual property)

12   the design elements, packaging, and package inserts related to Blackstone's products.

13   142.    Blackstone's intellectual property was created through extensive time, effort, and

14   expense marketing and developing Blackstone's products.  And Blackstone has the sole right to

15   supply certain products that embody Blackstone's intellectual property, including the Blackstone

16   Tower Fan.

17   143.    Costco knew or should have known that the Blackstone Tower Fans and Blackstone

18   Personal Fans were protected by intellectual property rights belonging to Blackstone.  However,

19   Costco stole Blackstone's intellectual property and unlawfully sold knock-offs of Blackstone's

20   products to consumers.

21   144.    For example, Costco conspired with Technomate/E2/Carpenter to intentionally

22   utilize Blackstone's Cascade-branded fan as their design base.

23   145.    On information and belief, Blackstone's tooling and molds were also utilized to

24   manufacture certain of Costco's knock-off fans.

25   146.    Costco also conspired with Technomate/E2/Carpenter to misappropriate

26   Blackstone's unique methods and processes, proprietary modeling and formulas, and valuable and

27

SECOND AMENDED COMPLAINT - 32
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

exclusive know-how for the knock-off fans for the 2020 season.

147.    For example, Costco knowingly utilized Blackstone's pallet optimization, packaging design requirements, and shipping container logistics for the fans that were ultimately labeled as the Sierra Tower Fan.

148.    Despite Blackstone's ownership of the intellectual property and the fact that the Expired License *expired*, Costco has imported for retail sale at least two knock-offs of Blackstone's Tower Fan bearing the names "Sierra Tower Fan" and "OmniBreeze Tower Fan."

149.    Costco's importation, distribution, and/or sale of the Sierra Tower Fan (and the enclosed user manual) and OmniBreeze Tower Fan (and enclosed user manual) infringes Blackstone's intellectual property, including Blackstone's copyrights, trade dress, and design protections.

150.    Just like Blackstone's "Cascade" model, Costco even used a mountain range in the name of its knock-off Sierra Tower Fan.

151.    Costco has no right to use Blackstone's intellectual property except with Blackstone's express written consent or agreement, which Blackstone has not granted to Costco for the Sierra Tower Fan or OmniBreeze Tower Fan.

152.    Costco's infringement of Blackstone's trade dress was knowing, intentional, and willful.  Costco knowingly and intentionally imported, distributed, and/or sold knock-offs of the Blackstone Tower Fan.

153.    Blackstone's trade dress as embodied in the packaging, overall design, louver system, grill, arched top form, control panel layout, control panel and icons, logo application, cylindrical stock, base, fit, and finish of the Blackstone Tower Fan, as well as the remote-control design including the "circle and cross" layout, control icons, and logo application, have acquired secondary meaning, and is not functional.

154.    Each of the features in Blackstone's trade dress is part of the total image and overall appearance of the Blackstone Tower Fan.  Blackstone's trade dress in the Blackstone Tower Fan

SECOND AMENDED COMPLAINT - 33
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

reflects the foregoing elements, but it is not merely those elements.  Blackstone's trade dress is composed, not of individual elements, but of the overall visual impression that the combination and arrangement of those elements creates. That total image and overall appearance is distinctive, unique, recognizable, and non-functional.  And that trade dress has acquired secondary meaning in the minds of consumers throughout the United States, and serves to identify Blackstone as the source of the Blackstone Tower Fan.

155.    Additionally, based on extensive marketing, promotion, and sales throughout the United States, Blackstone's trade dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying Blackstone as the source of the fans.

156.    Blackstone's promotion and sales of its distinctive trade dress has resulted in Blackstone's acquisition of valuable, legally protected rights in Blackstone's trade dress, as well as considerable customer goodwill.

157.    Costco's knock-off products have misappropriated Blackstone's trade dress by mimicking a combination of several elements of Blackstone's trade dress.

158.    Costco's  importation, distribution, and/or sale of the infringing knock-off fans incorporating Blackstone's designs that mimic a combination of several elements of Blackstone's trade dress is likely to cause confusion, mistake, or to deceive (and has, in fact, caused confusion, mistake, and deceived) consumers as to the affiliation, connection, or association of Costco's knock-off fans with Blackstone, or as to the origin, sponsorship, or approval by Blackstone of Costco's goods, services, or commercial activities.

159.    Costco's importation, distribution, and/or sale of the infringing knock-off fans incorporating Blackstone's designs that mimic a combination of several elements of Blackstone's trade dress unlawfully enables Costco to benefit unfairly from Blackstone's reputation and success, thereby giving Costco's infringing knock-off fans sales and commercial value they would not otherwise have.

160.    Blackstone's trade dress includes unique and non-functional aesthetic designs that

SECOND AMENDED COMPLAINT - 34
CASE NO. 2:20-CV-00964-TSZ

provide it with a distinctive appearance, despite an increase in manufacturing costs. The combination of elements in Blackstone's design is distinctive and serves to identify Blackstone as the source of the fans. The design elements are not functional, as demonstrated by the numerous alternative designs for competing products.

161. For example, in comparing the Blackstone Tower Fan to the Sierra Tower Fan and OmniBreeze Tower Fan, Costco has captured the distinctive, non-functional features of the Blackstone Tower Fan, which creates (and has, in fact, already created) a likelihood of confusion between the Blackstone Tower Fan and Sierra Tower Fan and OmniBreeze Tower Fan.

162. The consuming public has come to recognize the Blackstone's trade dress as signifying a particular source (*i.e.*, Blackstone). Because Blackstone's trade dress is inherently distinctive and/or has secondary meaning or acquired distinctiveness, consumers associate Blackstone' trade dress with Blackstone and are confused by the source of knock-off products sold by Costco.

163. Because of the popularity and success of the Blackstone Tower Fan, its non-functional aspects have become distinctive; that is, the appearance of Blackstone Tower Fan indicates to consumers that the source and origin of these fans is Blackstone, not competitors or others.

164. The many non-functional design aspects of the Blackstone Tower Fan, taken together as a total product image as Blackstone's trade dress, is distinctive and has acquired secondary meaning among the relevant consuming public, including because Blackstone for many years has been selling its the Blackstone Tower Fan exclusively, and Blackstone has extensively marketed and sold the Blackstone Tower Fan.

165. Indeed, Costco's copying of Blackstone's design is easily apparent from a simple comparison of the tower fans as depicted below:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

  

Blackstone Cascade Fan    Blackstone Sunter Fan    Costco Sierra Fan    Costco OmniBreeze Fan

166.    Costco's copying of the Blackstone Tower Fans and their distinctive design elements is creating both the likelihood of confusion and actual confusion in the marketplace. In fact, Blackstone has received numerous consumer complaints and requests for product replacement from consumers who contacted Blackstone's customer service email and/or phone number believing that the Sierra Tower Fan and/or OmniBreeze Tower Fan sold by Costco are actually the Blackstone Tower Fan.

167.    The consuming public has come to recognize the Blackstone's trade dress as signifying a particular source, and consumers associate Blackstone' trade dress with Blackstone and are confused by the source of knock-off products sold by Costco, because Blackstone's trade dress is inherently distinctive and/or has secondary meaning or acquired distinctiveness.

168.    For example, the following are several examples of consumers who recognized Blackstone's trade dress as signifying Blackstone as the particular source of the product, even

SECOND AMENDED COMPLAINT - 36
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

though the consumers purchased a Sierra Tower Fan from Costco:

From:     ██████
To:       Customer Service
Subject:  Remote not working
Date:     Tuesday, July 07, 2020 6:07:57 AM

Purchased 2 tower fans model mk-tf002 on 5/30/20 from costco.  One of the remotes already
quit working.  I've tried 3 brand new 2032 batteries.  I've done all your troubleshooting.  I
don't want to return entire fan but will have to if I cannot get a replacement remote.
Thanks
██████

*Costco order #300522256 ordered 5/30/20

From:     ██████
To:       Customer Service
Subject:  Need fan replacement
Date:     Monday, July 20, 2020 2:00:56 PM

Last month I bought a **Sierra** 40-inch Tower **Fan** Ultra-Quiet.  I came home today and found
that it will not adjust speeds.  It is barely blowing at a low speed.  I would like to request a
replacement fan, being that I have already thrown away all the packaging when I bought it and
found that I was very happy with it.  Can you please contact me as to what information you need
from me?

Thank you,
██████

This email may contain confidential material and is intended solely for the use of the named
addressee.  Access, copying or re-use of the e-mail or any information contained therein by
any other person is not authorized.  If you are not the intended recipient please notify  the
sender(originator) and delete all copies immediately.  The Hamblen County Department of
Education may monitor email to and from our network.

From:     ██████
To:       Customer Service
Subject:  49 inch tower fan remote
Date:     Monday, October 05, 2020 7:37:17 PM

Hello.
I recently purchased the Sierra 40" tower oscillating fan from Costco and the remote just
stopped working. I tried replacing the battery and it still doesn't work. Should I take the whole
thing back to Costco or can I get a replacement remote from you?

--
██████

The only people for me are the mad ones, the ones who are mad to live, mad to talk, mad to be saved,
desirous of everything at the same time. -Kerouac

SECOND AMENDED COMPLAINT - 37
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

**From:** ███████████████████
**Sent:** Tuesday, May 4, 2021 7:10 PM
**To:** Customer Service <customerservice@blackstoneltd.com>
**Subject:** Fan lights



Hello,

I'm wondering how to turn the lights off on our fan. I attached a picture of it with the lights on. They are very bright at night time. They used to go off and now we cannot figure it out.

**From:** █████████████████████
**Sent:** Sunday, May 9, 2021 8:41:14 PM
**To:** Customer Service <customerservice@blackstoneltd.com>
**Subject:** Sierra rotating fan

Hi,

I bought the rotating fan from Costco in June 2020. The unit has begun to wobble from side to side. Is this something that can be repaired or replaced?

I've attached a video of the wobble.

Thank you,



SECOND AMENDED COMPLAINT - 38
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

**From:** ███████████████████████
**Sent:** Monday, May 24, 2021 8:18:55 PM
**To:** Customer Service <customerservice@blackstoneltd.com>
**Subject:** Sierra ITM. /ART. 1371093

Hello,

Can you tell me the size of the screws that come with the Sierra tower fan. I did not see them in the box and would like to know what I need to purchase to replace them.

Thanks,

███████

169.    In fact, because Blackstone's trade dress is inherently distinctive and/or has secondary meaning or acquired distinctiveness, consumers easily confuse the Blackstone's Cascade-branded fan with Costco's knock-off Sierra Tower Fan, as illustrated by the following email from a confused consumer:

**From:** ████████████████████████████████
**Sent:** Friday, June 25, 2021 11:50 AM
**To:** Customer Service <customerservice@blackstoneltd.com>
**Cc:** ███████████████████████████
**Subject:** Cascade 40" Tower Fan - issue

Greetings,

Hope this message finds you well.
I purchase the SIERRA 40' tower fan from Costco and the pack of screws is missing (See highlighted boxes in screenshot B below).
I like the fan and I would rather not return it if I can get the screws to solve this issue.
Would you please provide me with a set of screws to screw the fan to the base or let me know the size of the screws since this info is not reflected on the manual.

Thank you,

███████

SECOND AMENDED COMPLAINT - 39
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260





170.    Similarly, because consumers recognize Blackstone's trade dress as signifying Blackstone as the particular source of the product, consumers assume that the OmniBreeze Tower Fan is also a Blackstone product.

171.    For example, the following are several examples of consumers who recognized Blackstone's trade dress as signifying Blackstone as the particular source of the product, even though the consumers purchased a OmniBreeze Tower Fan from Costco:

SECOND AMENDED COMPLAINT - 40
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**From:** ███████████████████

**Sent:**      Tuesday, November 8, 2022 8:26 PM

**To:**         Customer Service

**Subject:**  Omnibreeze 40" tower fan lock nut

Hello, I purchased an Omnibreeze 40" tower fan, however did not receive the lock nut that goes on the bottom that attaches and holds the fan to the base. Is there any way I could get that part sent to me?

Thank you for your time.

Sent from my iPhone

**From:** ████████████████

**Sent:** Tuesday, January 4, 2022 10:11 AM

**To:** Customer Service <customerservice@blackstoneltd.com>

**Subject:** Warranty issue on fan

Hello,

I purchased an OmniBreeze Fan at Costco on May 3, 2021 (while it was on sale) for $29.99.

The motor has started to fail and is making a VERY loud noise rendering the fan unusable.

Until this started, it was a great fan. But this has rendered it unusable. I would like to have this replaced or my money refunded, please.

The sales receipt is attached.

██████

SECOND AMENDED COMPLAINT - 41

CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**

**ROTH RIOJAS, PLLC**

925 Fourth Avenue, Suite 3950

Seattle, Washington 98104

(206) 452-0260

**From:** ██████████████████████████
**Sent:** Sunday, November 6, 2022 12:47 PM
**To:** Customer Service <customerservice@blackstoneltd.com>
**Subject:** Re: warranty

Can you replace under warranty?

On Sun, Nov 6, 2022 at 10:46 ███████████████ wrote:

I bought a fan 8 months ago and the returns springs for the buttons broke.



**From:** ████████████████
**Sent:** Thursday, October 27, 2022 4:27 PM
**To:** Customer Service
**Subject:** Costco OmniBreeze 40" Tower Fan buzzing

I've had this fan from Costco for about 5 months and it is making a buzzing vibration noise at econ, low and medium speed and it feels like they are all blowing very faintly.  Only the high speed setting is operating properly.  Do you know what the issue is and is there some way to correct it?  Or should I return the unit to Costco?

Thank you.

██

--
--------------------------------

██████████
██████

SECOND AMENDED COMPLAINT - 42
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

From: █████████████████████

Sent: Saturday, August 27, 2022 12:46 AM

To: Customer Service <customerservice@blackstoneltd.com>

Subject: Omnibreeze Tower Fan

Good Evening,

I just purchased the Omnibreeze Tower Fan Model DC2018 from Costco on August 16. I absolutely loved it and threw away the box thinking I was going to keep it. All of a sudden today, I turned the fan on and it's making this terrible high pitch buzzing noise that it never made before. It's so bad that I can't sleep with it on because of how loud it is. I unfortunately cannot take it back to Costco because I do not have the box anymore. Is there anything you guys can assist me with in fixing the fan?

Thank you,

████

Sent from my iPhone

172.    In fact, because Blackstone's trade dress is inherently distinctive and/or has secondary meaning or acquired distinctiveness, consumers easily confuse the Blackstone's Cascade-branded fan with Costco's knock-off OmniBreeze Tower Fan, as illustrated by the following email from a confused consumer:

From: █████████████████████

Sent: Wednesday, January 12, 2022 10:03 AM

To: Customer Service <customerservice@blackstoneltd.com>

Subject: Broken Tower fan replacement request

Hello there,

I purchased two tower fans from Costco and they came home delivered at different days. First delivery was good, but second delivery was wracked.

The parts are floating around within box as box itself did take a brunt of shipping conditions abuse.

Attaching the picture of how it is delivered and the receipt of Costco purchase order.

SECOND AMENDED COMPLAINT - 43
CASE NO. 2:20-CV-00964-TSZ





I would like to have broken one replaced. Can you please arrange the shipment of replacement of broken tower fan.

Shipping address would be same.



Thanks much,

Sent from my iPhone

SECOND AMENDED COMPLAINT - 44
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

173.    Frustrated by the inability to reach Costco or Costco's manufacturers, other consumers have searched online for Blackstone's customer service number and sought out service from Blackstone for fans Costco did not purchase from Blackstone, further evidencing that consumers associate the distinctive design and/or design elements with Blackstone as the source of the product.

174.    In addition, the manuals associated with the Sierra Tower Fan also copy directly, in significant part, from the Copyrighted Works.  For example, text and images contained in the Copyrighted Works are the same and/or substantially similar as the manuals associated with the Sierra Tower Fan.

175.    The manuals associated with the OmniBreeze Tower Fan also copy, in significant part, directly from the Copyrighted Works.  For example, text and images contained in the Copyrighted Works are the same and/or substantially similar as the manuals associated with the OmniBreeze Tower.

176.    Costco was previously made aware of Blackstone's copyrights to the Copyrighted Works.  And Blackstone has repeatedly requested that Costco stop its blatant infringement of Blackstone's intellectual property.

177.    For example, on April 23, 2020, Blackstone sent Costco a cease and desist letter wherein Blackstone (*inter alia*) demanded that Costco "[c]ease and desist from all unauthorized use of the Blackstone Intellectual Property including, but not limited to, ceasing the manufacture, distribution, importation, sale, and/or sale for importation of the Sierra Tower Fan, Blackstone Personal Fan, the Blackstone Tower Fan, or any products confusingly similar to the Blackstone Products."  Thus, Blackstone requested that Costco stop infringement of Blackstone's intellectual property, including concerning the Copyrighted Works and violations of the Lanham Act.

178.    Blackstone specifically advised Costco that "Blackstone owns trademark, trade dress, and copyright protection for the packaging and manuals; and trademark and trade dress protection for the overall design, the louver system, grill, arched top form, control panel layout,

SECOND AMENDED COMPLAINT - 45
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    control panel and icons, logo application, fit, and finish of the Blackstone Products, including the

2    Cascade Tower Fan a/k/a Blackstone Tower Fan."

3         179.    Blackstone specifically advised Costco that "Blackstone also owns trademark and

4    trade dress protection for the remote-control design including the 'circle and cross' layout, control

5    icons, and logo application."

6         180.    Blackstone provided Costco with a list of Blackstone's intellectual property,

7    including "Blackstone's name and logo," "Cascade brand name and logo," "Cascade proprietary

8    alphabet," "Trademark Registration Number 322542," "Pending Trademark Application Serial

9    Number 88216424," "Copyright Registration Number TX0008690544," "Copyright Registration

10   Number TX0008696259," and "Copyright Registration Number TXu002132551."

11        181.    Blackstone also described Blackstone's trade dress.

12        182.    Blackstone warned that "[t]he unauthorized use of the Blackstone Intellectual

13   Property or confusingly similar variations of the Blackstone Products is a violation of federal and

14   state trademark, trade dress, copyright, false advertising, unfair competition, and unfair trade

15   practice laws."

16        183.    Blackstone also warned that "[t]he unauthorized use of Blackstone Intellectual

17   Property would cause injury to Blackstone including lost sales, confusion as to the source of the

18   infringing products, and an improper association with Blackstone that serves to dilute the goodwill

19   that Blackstone has developed in the market."

20        184.    Blackstone also "reserve[d] the right to seek actual and statutory damages, punitive

21   damages, enhanced damages, attorneys' fees, costs, injunctions, exclusion and cease-and-desist

22   orders, or any other remedy to which Blackstone is entitled as a result of Costco's actions."

23        185.    In addition, on May 22, 2020, Blackstone sent Costco another letter wherein

24   Blackstone (*inter alia*) described that "Costco's copying of Blackstone's tower fans and their

25   distinctive design elements is creating both the likelihood of confusion and actual confusion in the

26   marketplace."

27

SECOND AMENDED COMPLAINT - 46
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

186.    Blackstone also described that it had "received consumer complaints and requests for product replacement from consumers who contact Blackstone's customer service email and phone number believing that the Sierra fans sold by Costco are actually Blackstone's tower fans."

187.    Costco has the power to cease distribution and/or sale of the Sierra Tower Fan and OmniBreeze Tower Fan, but has refused to cease the distribution and/or sale of the Sierra Tower Fan or OmniBreeze Tower Fan.

## V.    CAUSES OF ACTION

### A.    First Claim:  Breach of Contract (2019 Fan Program Agreement)

188.    Blackstone re-alleges and incorporates by reference each of the allegations in the above paragraphs.

189.    Blackstone entered a valid and enforceable 2019 Fan Program Agreement with Costco, pursuant to which Costco agreed to purchase from Blackstone approximately 2.5 million Blackstone Tower Fans and in excess of 500,000 "2-Packs" of Blackstone Personal Fans for the 2019 season.

190.    Costco issued purchase orders to Blackstone.

191.    In addition, the agreement between Costco and Blackstone is also evidenced by the course of dealing, course of conduct, and/or course of performance between the parties during their more than 15-year relationship.

192.    To the extent not frustrated or precluded by Costco' misconduct, Blackstone fully performed under the 2019 Fan Program Agreement, and/or has been excused from further performance by Costco's material breaches.

193.    Through its wrongful conduct described above, Costco materially breached the 2019 Fan Program Agreement, including by failing and refusing to purchase 2.5 million Blackstone Tower Fans and a half a million "2-Packs" of Blackstone Personal Fans from Blackstone; engaging and purchasing Blackstone's products through Technomate/E2/Carpenter and/or directly from DCI/Home Star, Mikia, and/or E2; improperly retaining funds belonging to

SECOND AMENDED COMPLAINT - 47
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1  Blackstone; charging against Blackstone's vendor account; withholding and/or directing the
2  withholding of funds; deducting against amounts owed to Blackstone for product that was not sold
3  to Costco by Blackstone; and failing to pay Blackstone all amounts due under the 2019 Fan
4  Program Agreement.

5      194.    As a direct and proximate result of Costco's breaches, Blackstone has suffered
6  substantial damages, in an amount to be proven.

7  **B.    Second Claim:  Breach of Implied Covenant of Good Faith and Fair Dealing**

8      195.    Blackstone re-alleges and incorporates by reference each of the allegations in the
9  above paragraphs.

10     196.    A covenant of good faith and fair dealing is implied in every contract.

11     197.    Costco, therefore, owed Blackstone a duty of good faith and fair dealing.

12     198.    Through its wrongful conduct described above, Costco breached its duties to
13  Blackstone and frustrated the purpose of Costco's agreement with Blackstone, including by
14  engaging and purchasing Blackstone's products through Technomate/E2/Carpenter and/or directly
15  from DCI/Home Star, Mikia, and/or E2; and improperly retaining funds belonging to Blackstone,
16  charging against Blackstone's vendor account, withholding and/or directing the withholding of
17  funds, and deducting against amounts owed to Blackstone for product that was not sold to Costco
18  by Blackstone.

19     199.    As a direct and proximate result of Costco's breaches, Blackstone has suffered
20  substantial damages, in an amount to be proven.

21  **C.    Third Claim- Fraudulent Inducement, Fraudulent Concealment, Fraud, and
22  Intentional Misrepresentation**

23     200.    Blackstone re-alleges and incorporates by reference each of the allegations in the
24  above paragraphs.

25     201.    Costco made numerous misrepresentations, half-truths, and omissions, including
26  several representations of existing fact (and omissions) regarding its dealings with
27  Technomate/E2/Carpenter, cutting Blackstone out, and obligations in the Expired License.

SECOND AMENDED COMPLAINT - 48
CASE NO. 2:20-CV-00964-TSZ

202.     Costco also defrauded Blackstone by failing to disclose and making misleading and false statements of material fact including, but not limited to (a) Costco's failure to disclose its contact, relationship, and plans with Technomate/E2/Carpenter; (b) Costco's false representations that it would continue to do business with Blackstone going forward; and (c) that Costco had the ability to and would adhere to its obligations under the Expired License.

203.     For example, Costco affirmatively misrepresented that it was supposedly contracting factory direct with Mikia, and omitted that it was actually dealing with Technomate/E2/Carpenter.

204.     Costco also engaged in half-truths that the so-called "very reputable vendor" was merely a "conduit" of information, rather than competitors who were actively seeking to (and did) supplant Blackstone.

205.     Costco concealed that it already entered into agreements with Technomate/E2/Carpenter *before* Blackstone was forced to execute the Expired License.

206.     Costco also failed to disclose the fact that, *before* Blackstone was forced to execute the Expired License, Costco had already issued purchase orders to Technomate/E2/Carpenter and was already shipping Blackstone's fans.

207.     Moreover, Costco misled Blackstone that the Expired License was merely a "one-off" solution to a short-term problem, and that Costco would continue doing business with Blackstone in the long-term *if* Blackstone agreed to the Expired License.

208.     Costco omitted that it was planning to cut Blackstone out completely.

209.     Costco also demanded that Blackstone be transparent and lay all its cards on the table, while simultaneously concealing that it was dealing behind Blackstone's back with Technomate/E2/Carpenter.

210.     Costco's representations that it was engaging factory direct with Mikia were false. Costco's representations that it was merely pursuing a short-term "one-off" solution were also false.   And when Costco represented to Blackstone that it was working with Mikia, its omission

SECOND AMENDED COMPLAINT - 49
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

of the other key players (Technomate, E2, and Carpenter) gave the false impression that Costco was *not* working with such competitors of Blackstone.

211.   Among other misrepresentations, half-truths, and omissions, Costco also made several misrepresentations in the Expired License.  For example, Costco misrepresented that the standards for the products would be based on established "QA testing and production protocols," but Costco failed to disclose that the fans already "on the water" did *not* comply.  Costco also made misrepresentations regarding item numbers, UPC numbers, and purchase orders.  And Costco concealed that the item and UPC numbers could not be changed on approximately 340,000 fans, and failed to disclose that its system lacked the required tracking.  Costco also concealed that hundreds of thousands of fans were falsely labeled as "Distributed by: Blackstone."   In addition, Costco made misrepresentations regarding Blackstone's customer service information and warranty cards.

212.   Costco knew the numerous misrepresentations, half-truths, and omissions were false at the time they were made and made them with actual malice, improper motive, and/or with the intent of injuring Blackstone, to steal its business, improperly appropriating the profits as its own, and fraudulently inducing Blackstone into engaging in the actions discussed above, including execution of the Expired License.

213.   For example, Costco knew that it was dealing with Technomate/E2/Carpenter.  Indeed, since at least November 5, 2018, Costco knew that Technomate and Carpenter were spearheading the attempt to supplant Blackstone and had already improperly obtained Blackstone's purchase orders for the 2019 fan program.

214.   Costco knew that the so-called "very reputable vendor" was not merely a "conduit" of information.

215.   Costco knew that it already entered into agreements with Technomate/E2/Carpenter *before* Blackstone was forced to execute the Expired License.  Costco also knew that, *before* Blackstone was forced to execute the Expired License, Costco had already

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   issued purchase orders to Technomate/E2/Carpenter and was already shipping Blackstone's fans.

2   216.   Although Costco repeatedly threatened that Costco would continue doing business

3   with Blackstone only if Blackstone executed the Expired License, Costco knew that it never

4   intended to do further business with Blackstone.

5   217.   Costco also knew the truth about its own intentions and capabilities.

6   218.   Costco's numerous misrepresentations, half-truths, and omissions were material.

7   For example, Costco recently admitted that the involvement of Technomate/E2/Carpenter was

8   *material* to Costco.  Indeed, Costco proclaimed it was shocking when it allegedly learned of

9   Blackstone utilizing two factories, even though Costco did already know well in advance about

10  both Mikia and DCI/Home Star.

11  219.   Moreover, Blackstone repeatedly asked Costcto about who was involved.

12  Blackstone also questioned the identity of the vendor who contacted Costco, and Blackstone

13  expressly informed Costco that "the identity of the other vendor is material to Blackstone's

14  participation in the program."   The reasons are obvious: Blackstone's name and valuable

15  intellectual property were being utilized for the 2019 fans, effectively placing Blackstone's

16  reputation in the market at stake.  Blackstone had every right to know what entities were using

17  those assets.  Indeed, Costco repeatedly declared that transparency in its manufacturing and supply

18  chain is important to Costco to protect its reputation.  The same is true for Blackstone.

19  220.   The distinction between who Costco represented was involved (Mikia) and who

20  was actually involved (Technomate, E2, and Carpenter) was also inherently material.  Mikia was

21  a factory that was known to Blackstone and had been manufacturing Blackstone products for

22  several years.  Conversely, Technomate/E2/Carpenter are competitors.  Costco falsely represented

23  to Blackstone that its purported factory direct transaction with Mikia was a "one-off" that arose by

24  happenstance from the alleged billing dispute between Mikia and Blackstone.  But what was really

25  happening was very different: Technomate, a competitor to Blackstone, was attempting to muscle

26  in on Blackstone's entire business model.  And similarly, E2 was formed for the specific purpose

27

SECOND AMENDED COMPLAINT - 51
CASE NO. 2:20-CV-00964-TSZ

1    of stealing Blackstone's business with Costco.   Technomate and E2 were also employing

2    Carpenter, whose career is focused on hawking consumer products from Blackstone's competitors

3    to Costco.   In other words, it would have been highly material to Blackstone to know that by

4    executing the Expired License, it was effectively handing over its business to competitors (which

5    was borne out by what ultimately happened with the 2020 fan program).

6        221.    The fact that Costco knew that it could not perform its obligations under the Expired

7    License was also material.   In addition, it was material for Blackstone to know that Costco was

8    dealing with Technomate/E2/Carpenter behind Blackstone's back and that Costco was cutting

9    Blackstone out.

10        222.    Costco made the numerous misrepresentations, half-truths, and omissions, and

11    concealed its fraud, for the purpose of defrauding Blackstone and inducing Blackstone to continue

12    discussions, execute the Expired License, and not pursue other business with the intent that Costco

13    could leverage Blackstone.

14        223.    Blackstone specifically inquired about the vendor involved, but was falsely

15    informed that it was merely the "conduit" of information.

16        224.    Costco's intent is also evidenced by its external representations to Blackstone.   For

17    example, internally Costco referenced E2 as both the vendor and factory.   Costco also recently

18    admitted that Technomate/E2/Carpenter where involved the whole time and they frequently

19    communicated with Carpenter, as an agent of Technomate and E2.   In its external communications

20    with Blackstone, however, Costco carefully avoided any mention of Technomate, E2, or

21    Carpenter.  And Costco was specific in its false representations that it was engaging factory direct

22    with Mikia.

23        225.    Costco also intended that Blackstone rely on the representations in the Expired

24    License.

25        226.    Similarly, Costco's threats that Blackstone needed to comply with Costco's

26    demands if it ever wanted to walk through Costco's doors again were also obviously intended to

27

SECOND AMENDED COMPLAINT - 52
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1  induce reliance by Blackstone.

2       227.   Blackstone, to its detriment, reasonably relied on Costco's false representations and

3  omissions.  Costco mispresented that it was engaging factory direct with Mikia, while concealing

4  that it was dealing directly with Technomate/E2/Carpenter.  Among other misrepresentations and

5  omissions, Blackstone relied on Costco's misrepresentations and omissions that it was engaging

6  factory direct with Mikia.  Blackstone also relied on Costco's representations in the Expired

7  License, as well as the representations that this was a "one-off."

8       228.   Costco never disclosed that it was dealing directly with Technomate/E2/Carpenter.

9  Costco also failed to disclose that it had actually contracted with E2, a newly-created affiliate of

10  Technomate, who was also "represented" by Carpenter.  Blackstone was also ignorant of the fact

11  that Costco was incapable of performance of its obligations under the Expired License.  Nor could

12  Blackstone have known that Costco was dealing with Technomate/E2/Carpenter behind

13  Blackstone's back and not planning to do business with Blackstone.

14       229.   Blackstone also had no means to independently verify information uniquely within

15  Costco's purview, and which information Costco continuously withheld from Blackstone, such as

16  which entities Costco was contracting with, and whether Costco could follow through on its own

17  commitments.  In addition, Blackstone reasonably relied on Costco's representations (and non-

18  disclosures) based on the parties' long and successful relationship, and Costco's touted

19  commitment to respect its suppliers and act with transparency.

20       230.   Blackstone was induced to continue discussions and/or to do business with Costco,

21  and Blackstone was induced into the Expired License.

22       231.   Blackstone never would have signed the Expired License knowing the material

23  information that has finally been revealed to Blackstone.

24       232.   Blackstone has also suffered harm, significant injury, and substantial damages.

25       233.   Costco's fraud is further described in the briefing on arbitrability before the

26  arbitrator, including Respondent/Counter-Claimant Blackstone International, Ltd.'s Opening Brief

27

SECOND AMENDED COMPLAINT - 53
CASE NO. 2:20-CV-00964-TSZ

Concerning Arbitrability, Declaration of John F. Black in Support of Respondent/Counter-Claimant Blackstone International, Ltd.'s Opening Brief Concerning Arbitrability and attached exhibits, Declaration of Christopher M. Huck in Support of Respondent/Counter-Claimant Blackstone International, Ltd.'s Opening Brief Concerning Arbitrability and attached exhibits, Respondent/Counter-Claimant Blackstone International, Ltd.'s Reply Brief Concerning Arbitrability, Supplemental Declaration of John F. Black in Support of Respondent/Counter-Claimant Blackstone International, Ltd.'s Reply Brief Concerning Arbitrability and attached exhibits, and Supplemental Declaration of Christopher M. Huck in Support of Respondent/Counter-Claimant Blackstone International, Ltd.'s Opening Brief Concerning Arbitrability and attached exhibits, all of which is incorporated herein by reference.

234.    As a direct and proximate result of Costco's fraud, Blackstone is entitled to rescission of the Expired License and, or in the alternative, damages in an amount to be proven.

**D.    <u>Fourth Claim- Negligent Misrepresentation</u>**

235.    Blackstone re-alleges and incorporates by reference each of the allegations in the above paragraphs.

236.    Costco made representations and failed to disclose material information that guided Blackstone in its business relationships, including with the manufacturers and Costco.    For example, among other misrepresentations, half-truths, and omissions, Costco (a) failed to disclose its contacts, relationship, and plans with Technomate/E2/Carpenter; (b) falsely represented that it would continue to do business with Blackstone going forward; and (c) misrepresented that it had the ability to and would adhere to its obligations under the Expired License.

237.    Costco misrepresented that it was supposedly contracting factory direct with Mikia, and omitted that it was actually dealing with Technomate/E2/Carpenter.  Costco also engaged in half-truths that the so-called "very reputable vendor" was merely a "conduit" of information, rather than competitors who were actively seeking to (and did) supplant Blackstone.  Costco concealed that it already entered into agreements with Technomate/E2/Carpenter *before* Blackstone was

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1  forced to execute the Expired License.  Costco also failed to disclose the fact that, *before*

2  Blackstone was forced to execute the Expired License, Costco had already issued purchase orders

3  to Technomate/E2/Carpenter and was already shipping Blackstone's fans.   Costco misled

4  Blackstone that the Expired License was merely a "one-off" solution to a short-term problem, and

5  that Costco would continue doing business with Blackstone in the long-term *if* Blackstone agreed

6  to the Expired License.   Costco omitted that it was planning to cut Blackstone out completely.

7  Costco also demanded that Blackstone be transparent and lay all its cards on the table, while

8  simultaneously concealing that it was dealing behind Blackstone's back with

9  Technomate/E2/Carpenter.

10       238.    Among other misrepresentations, half-truths, and omissions, Costco also made

11  several misrepresentations in the Expired License.  For example, Costco misrepresented that the

12  standards for the products would be based on established "QA testing and production protocols,"

13  but Costco failed to disclose that the fans already "on the water" did *not* comply.  Costco also

14  made misrepresentations regarding item numbers, UPC numbers, and purchase orders.   And

15  Costco concealed that the item and UPC numbers could not be changed on approximately 340,000

16  fans, and failed to disclose that its system lacked the required tracking.  Costco also concealed that

17  hundreds of thousands of fans were falsely labeled as "Distributed by: Blackstone."   In addition,

18  Costco made misrepresentations regarding Blackstone's customer service information and

19  warranty cards.

20       239.    Costco knew or should have known that the information was supplied to guide

21  Blackstone  in  its  business  transactions.   For  example,  the  involvement  of

22  Technomate/E2/Carpenter was material to Costco.  Blackstone also repeatedly asked Costcto

23  about who was involved.  Blackstone also questioned the identity of the vendor who contacted

24  Costco, and Blackstone expressly informed Costco that "the identity of the other vendor is material

25  to Blackstone's participation in the program."   Costco was also required to make certain

26  representations and agree to certain obligations in the Expired License.

27

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

240.    Costco was negligent in obtaining or communicating the false information and omissions.  For example, Costco knew that it was dealing with Technomate/E2/Carpenter.  Indeed, since at least November 5, 2018, Costco knew that Technomate and Carpenter were spearheading the attempt to supplant Blackstone and had already improperly obtained Blackstone's purchase orders for the 2019 fan program.  Costco knew that the so-called "very reputable vendor" was not merely a "conduit" of information.  Costco knew that it already entered into agreements with Technomate/E2/Carpenter *before* Blackstone was forced to execute the Expired License.  Costco also knew that, *before* Blackstone was forced to execute the Expired License, Costco had already issued purchase orders to Technomate/E2/Carpenter and was already shipping Blackstone's fans.

241.    Although Costco repeatedly threatened that Costco would continue doing business with Blackstone only if Blackstone executed the Expired License, Costco knew that it never intended to do further business with Blackstone.  Costco also knew the truth about its own intentions and capabilities.

242.    Blackstone, to its detriment, reasonably relied on Costco's misrepresentations and omissions.  For example, Costco misrepresented that it was engaging factory direct with Mikia, while concealing that it was dealing directly with Technomate/E2/Carpenter.  Among other misrepresentations and omissions, Blackstone relied on Costco's misrepresentations and omissions that it was engaging factory direct with Mikia.  Blackstone also relied on Costco's representations in the Expired License, as well as the representations that this was a "one-off."

243.    Costco never disclosed that it was dealing directly with Technomate/E2/Carpenter.  Costco also failed to disclose that it had actually contracted with E2, a newly-created affiliate of Technomate, who was also "represented" by Carpenter.  Blackstone was also ignorant of the fact that Costco was incapable of performance of its obligations under the Expired License.  Nor could Blackstone have known that Costco was dealing with Technomate/E2/Carpenter behind Blackstone's back and not planning to do business with Blackstone.

244.    Blackstone also had no means to independently verify information uniquely within

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

Costco's purview, and which information Costco continuously withheld from Blackstone, such as which entities Costco was contracting with, and whether Costco could follow through on its own commitments. In addition, Blackstone reasonably relied on Costco's representations (and non-disclosures) based on the parties' long and successful relationship, and Costco's touted commitment to respect its suppliers and act with transparency.

245. As a direct and proximate result of Costco's negligent misrepresentations, Blackstone has suffered damages in an amount to be proven.

**E. Fifth Claim- Tortious Interference (Contractual Relations/Economic Expectancy/Business Relationships)**

246. Blackstone re-alleges and incorporates by reference each of the allegations in the above paragraphs.

247. Blackstone possessed a contractual relationship with the factories, including DCI/Home Star.

248. Blackstone entered into valid and enforceable agreements with the factories, including 2018 Maryland Contract, pursuant to which DCI/Home Star (and Mikia) agreed, among other things, that they would manufacture and sell the Blackstone Tower Fans to Blackstone for Blackstone to supply to Costco for the 2019 Fan Program Agreement.

249. Costco knew about Blackstone's agreements with DCI/Home Star and Mikia, and knowingly and intentionally interfered with Blackstone's contractual relationships.

250. Through its wrongful conduct described above, Costco acted intentionally, willfully, maliciously, and in bad faith to interfere with Blackstone's agreements with DCI/Home Star (and Mikia) by, among other things, secretly communicating directly with Technomate/E2/Carpenter and, instead of honoring the 2019 Fan Program Agreement with Blackstone by refusing to deal directly with Technomate/E2/Carpenter, conspiring with Technomate/E2/Carpenter behind Blackstone's back and tortiously interfering with Blackstone's contractual relationships with the factories.

251. Costco committed these intentional, malicious, and willful acts for the improper

SECOND AMENDED COMPLAINT - 57
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

and wrongful purpose of tortuously interfering with Blackstone's agreements with DCI/Home Star (and Mikia), unfairly competing with Blackstone, and harming Blackstone without justification.

252.  Blackstone also possessed a prospective economic advantage, including in relation to its business relationships with the factories.

253.  Costco knowingly and intentionally interfered with Blackstone's economic expectancy.

254.  Costco acted intentionally, willfully, maliciously, and in bad faith to interfere with and cause damage to Blackstone's business relationship with DCI/Home Star (and Mikia) and other manufactures, as well as other retailers.

255.  Costco also improperly encouraged, caused, and/or aided in DCI/Home Star's wrongful pursuit of baseless claims against Blackstone.

256.  Costco's tortuous interference with Blackstone's relationships with manufacturers and other retailers has damaged Blackstone by injuring its ability to have Blackstone's products manufactured by other factories in China.

257.  Costco's conduct was wrongful both as to purpose and means.  Costco acted out of the wrongful purpose and used wrongful means in an attempt to destroy Blackstone's business and improperly appropriate all resulting profits.

258.  Costco's intentional interference with Blackstone's agreements has also had an adverse financial impact on Blackstone's current and future business operations.

259.  Costco's intentional and willful acts were calculated and designed to damage Blackstone, harm its business relationship built over many years, and deny Blackstone its profits.

260.  Costco committed these intentional and willful acts for the improper and wrongful purpose of unfairly competing and harming Blackstone without justification.

261.  Costco interfered with Blackstone's contracts, business relationships, and economic expectancy in an attempt to destroy Blackstone's business and improperly appropriate all resulting profits.

SECOND AMENDED COMPLAINT - 58
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

262.    Blackstone was also forced to execute the Expired License because of Costco's improper threats (and other misconduct) that left Blackstone with no reasonable alternative.  In fact, Blackstone was under extreme duress, feeling like it had a gun to its head, no choice, and that it was being forced to sign the Expired License.

263.    For example, Costco's improper (and extraordinary) threats began in the first moments of what should have been a supportive call between long-time business partners.  Instead of "respecting" its supplier, Costco dictated compliance with Costco's demands under threat of never again walking "through the doors" at Costco.

264.    Costco specifically threatened Blackstone that its failure to agree to Costco's demands regarding the terms of the Expired License would have adverse effects on the relationship between Costco and Blackstone.  Costco also made its demands to Blackstone as threatened "deal-breakers."

265.    Costco also threatened Blackstone that it would proceed "with or without" Blackstone.  Costco also increased the pressure on all fronts, including withholding monies due to Blackstone on prior sales programs and threatening to cancel upcoming sales programs.  In addition to exploiting Blackstone, it was Costco that had put Blackstone in a position of weakness in the first place, including by conspiring to unfairly compete with Blackstone and facilitating the factories to breach their contracts with Blackstone.  Costco had also prevented all opportunities for Blackstone by secretly dealing with Technomate/E2/Carpenter and also engaging directly with DCI/Home Star.

266.    As a direct, proximate, and foreseeable result of Costco's interference, Blackstone has suffered substantial damages in an amount to be proven.

**F.    Sixth Claim:  Violation of Lanham Act**

267.    Blackstone re-alleges and incorporates by reference each of the allegations in the above paragraphs.

268.    By Costco's unauthorized use of Blackstone's intellectual property, Costco violated

SECOND AMENDED COMPLAINT - 59
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

the Lanham Act in at least three different ways: (i) Costco falsely designated the origin of its products; (ii) Costco infringed Blackstone's trade dress; and (iii) Costco competed unfairly with Blackstone.

269.   Costco's actions described herein constitute an unlawful use of a word, term, name, symbol, or device and/or combination thereof; a false designation of origin, a false or misleading description of fact, and/or false or misleading representation of fact; and unfair competition, which has caused and is likely to continue to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Blackstone with Costco's infringing products, or as to the origin, sponsorship, endorsement, or approval of Costco's goods, services, or commercial activities, and/or dilution of the distinctive quality of Blackstone's intellectual property, all in violation of the Lanham Act, 15 U.S.C. § 1125.

**Costco Falsely Designated the Origin of Its Products**

270.   Among other violations of the Lanham Act, for the 2019 season, Costco made false designations of origin, and/or false or misleading descriptions of fact, and/or false or misleading representations of fact.

271.   For example, Costco wrongfully, improperly, and without authorization designated fans that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar as distributed by Blackstone.  For example, Blackstone Tower Fans and Blackstone Personal Fans that have been sold at Costco outlets, which were not sold to Costco by Blackstone, contained the following false statement on the packaging, manuals, and/or molding:

> Distributed By:
> Blackstone International Ltd.
> 2018 Lord Baltimore Drive
> Baltimore, MD 21244
> USA
> Made in China

272.   Contrary to Costco's designation, these products are not "distributed by" Blackstone.  Costco is falsely designating the origin of these products, misrepresenting who is responsible for the products, and misleading the consumers.  This misconduct is designed to

SECOND AMENDED COMPLAINT - 60
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    improperly impose on Blackstone responsibility for a product that it has had no role in

2    manufacturing, producing, distributing, or selling.

3        273.   Blackstone Tower Fans and Blackstone Personal Fans manufactured by

4    Technomate/E2/Carpenter and/or DCI/Home Star directly for Costco also used Blackstone's UPC

5    number, leading to confusion about the origin of the goods.  Costco has no right to use Blackstone's

6    UPC number.

7        274.   Additionally, Costco has imported, distributed, and/or sold Blackstone Tower Fans

8    and Blackstone Personal Fans that falsely, wrongfully, improperly, and without authorization

9    printed Blackstone's customer service phone number and email address on the packaging, in the

10   user manual, and embedded on the bottom of the product itself.

11       275.   For example, Blackstone Tower Fans and Blackstone Personal Fans being sold at

12   Costco warehouse outlets that were manufactured by DCI/Home Star also had printed

13   Blackstone's Customer Service phone number (1-888-525-7969) and email address

14   (customerservice@blackstoneltd.com) on the packaging, in the user manual, and embedded on the

15   bottom of the product itself.  Costco has no right to use Blackstone customer service information

16   on any of the products manufactured by DCI/Home Star (or any other manufacturer) and sold to

17   Costco for resale.

18       276.   As a further example, the Blackstone Tower Fan manufactured by DCI/Home Star

19   and shipped under Purchase Order No. 1710131867 on March 11, 2019, is one of the Blackstone

20   Tower Fans on which Costco improperly, inaccurately, and without authorization falsely

21   designated Blackstone as the distributor and used Blackstone's customer service (hereinafter,

22   "Blackstone Tower Fan, P.O. No. 1710131867").

23       277.   The following is a photo of the packaging of Blackstone Tower Fan, P.O. No.

24   1710131867 that shows Costco improperly designated the distributor of Blackstone Tower Fan,

25   P.O. No. 1710131867 as the distributor and used Blackstone's UPC, number 846270000216

26   (located below the bar code), without authorization.  The relevant portions of the photograph are

27

SECOND AMENDED COMPLAINT - 61
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1  highlighted using a red circle:



SECOND AMENDED COMPLAINT - 62
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

278.     The following image is another picture of the packaging of Blackstone Tower Fan, P.O. No. 1710131867 that shows that Costco improperly and without authorization used Blackstone's customer service phone number and email address.  Again, the relevant portions of the photograph are highlighted using a red circle:



GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

279.    The following image is a picture of the bottom of the base of Blackstone Tower Fan, P.O. No. 1710131867 that shows that Costco improperly and without authorization used Blackstone's customer service phone number and email address.  Again, the relevant portions of the photograph are highlighted using a red circle:

280.     As another example, the Blackstone Personal Fan manufactured directly for Costco by DCI/Home Star and bearing a label that identifies it as Purchase Order No. 1791217878 is an example of Costco's further false designation and fraud in the manufacture and shipment of goods for sale to consumers in the United States.  Purchase Order No. 1791217878 was the number of a purchase order originally issued by Costco to Blackstone, and in turn issued by Blackstone to DCI/Home Star.  But when Costco breached the 2019 Fan Program Agreement, Costco cancelled Purchase Order No. 1791217878 along with thousands of other purchase orders to Blackstone under the 2019 Fan Program Agreement.  DCI/Home Star never sold a fan with that purchase order number to Blackstone.  Despite the fact that Purchase Order No. 1791217878 was cancelled, Costco had that purchase order number affixed to the fan to falsely designate the origin of the product and to avoid any responsibility for the product.  Thus, the fan bearing Purchase Order No. 1791217878 is actually Costco's fan and not a fan that was manufactured for Blackstone or sold by Blackstone to Costco.  It is one of the hundreds of thousands of the Blackstone Personal Fans on which Costco improperly, inaccurately, and without authorization falsely designated Blackstone as the distributor and used Blackstone's Customer Service (hereinafter, "Blackstone Personal Fan, P.O. No. 1791217878").

281.     The following is a photo of the packaging of Blackstone Personal Fan, P.O. No. 1791217878 that shows Costco improperly designated Blackstone as the distributor of Blackstone Personal Fan, P.O. No. 1791217878.  The relevant portions of the photograph are highlighted using a red circle:

SECOND AMENDED COMPLAINT - 65
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260



SECOND AMENDED COMPLAINT - 66
CASE NO. 2:20-CV-00964-TSZ

282.    The following image is another picture of the packaging of Blackstone Personal Fan, P.O. No. 1791217878 that shows that Costco improperly and without authorization used Blackstone's customer service phone number and email address.  Again, the relevant portions of the photograph are highlighted using a red circle:



GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

283.    The following image is picture of the bottom of the base of a Blackstone Personal Fan manufactured directly for Costco by DCI/Home Star that shows that Costco improperly and without authorization used Blackstone's customer service phone number and email address. Again, the relevant portions of the photograph are highlighted using a red circle:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

284.  As depicted, the fans that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Home Star also utilized the stylized "B" trademarked by Blackstone, as well as the Cascade brand name, logo, and proprietary alphabet, and Blackstone's name and logo.

285.  Additionally, Blackstone has also received and continues to receive customer complaints and product warranty cards for Blackstone Tower Fans and Blackstone Personal Fans manufactured directly for Costco by Technomate/E2/Carpenter and/or DCI/Home Star, indicating that Costco has included product warranty cards in Costco products and packaging that falsely represent that Blackstone is providing a warranty for such products.  Those warranty cards also include Blackstone's name.  Blackstone has no warranty responsibility for such products and has never authorized Costco to sell such products under the Expired License with Blackstone warranty cards or any other information indicating that Blackstone warrants such products.

286.  Although later in production Costco made minor changes by printing a Homestar customer service email and phone number on some packaging and some user manuals, those efforts did not correct the false designation of origin of the product and the misleading listing of Blackstone's customer service information because the product still identifies Blackstone's customer service phone number and email embedded on the product itself.

287.  By representing to the public that its products are distributed by Blackstone and directing the public to contact Blackstone at Blackstone's customer service email and phone number, Costco intentionally, falsely, improperly, and maliciously mislead the public with the intent to harm Blackstone and avoid Costco's own responsibility for the products.  Such actions are improper and falsely designate the origin of Costco's goods as being from Blackstone, mislead the public as to the origin of the infringing goods, and dilute Blackstone's brand and/or marks in violation of Section 1125 of the Lanham Act (15 U.S.C. § 1125).

288.  At no point did Costco have the right to use Blackstone customer service information on any of the products that were not sold by Blackstone to Costco.

SECOND AMENDED COMPLAINT - 69
CASE NO. 2:20-CV-00964-TSZ

289.     Blackstone repeatedly notified Costco of the false origin and customer service issues related to the products that are being sold directly to Costco by Technomate/E2/Carpenter and/or the other factories.

290.     For example, counsel for Blackstone contacted Costco by telephone and email, including an email from Blackstone's counsel to Costco's corporate counsel dated May 2, 2019. Among other things, the May 2, 2019 email notified Costco has follows:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

Thank you for your time on the phone today.  This email will provide you with additional detail regarding the problems I mentioned that Blackstone has recently learned of relating to the sales and service of products Costco is selling that are subject to the Intellectual Property License Agreement between Costco and Blackstone.  I am bringing these problems to your attention so Costco can address them promptly.  Blackstone has recently experienced a spike in reports to its Customer Service phone number and its Customer Service email address, as well as returns posted to its Costco vendor account.  This is quite surprising since the fans being sold by Costco currently are supplied by other Vendors.  In the process of investigating these issues, Blackstone has discovered the following:

      1.      The Tower Fans and Personal Fans currently being sold at Costco Warehouse outlets that were manufactured by Home Star International, Ltd. and Design Center International Ltd. ("DCI/Home Star") contain the following statement on the side of the packaging:

Distributed By:
Blackstone International Ltd.
2018 Lord Baltimore Drive
Baltimore, MD 21244
USA
Made in China

These products are not distributed by Blackstone.  The statement is not an accurate statement of the origin of these products or who is responsible for the products.  The item numbers of the products at issue are 2187363 (2019 Mini 2 Pack), 3013422 (2019 Tower Fan), and 4013422  (2019 Tower fan).

      2.      The Tower Fans and Personal Fans currently being sold at Costco Warehouse outlets that were manufactured by DCI/Home Star contain the following false designations relating to Customer Service printed on the packaging, engraved on the product itself, and printed on the Instruction Manual (with minor variations):

Customer Service
Service a la Clientele
Servicio al Cliente:
English/Espanol: 1-888-525-7969
Francais: 410-277-9370
customer service@blackstoneltd.com

The Customer Service phone numbers listed on these Costco/Home Star products are Blackstone's Customer Service phone numbers and Blackstone's Customer Service email address.  Neither Costco nor DCI/Home Star has ever been authorized to use the Blackstone Customer Service information on any of the

SECOND AMENDED COMPLAINT - 71
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

products Costco has purchased from DCI/Home Star and is now selling in its stores.  The License Agreement provides that Blackstone is not responsible for customer service, product liability or defects.  Again, these statements on these products are not an accurate statement of the origin of these products or who is responsible for the products.  The same item numbers are at issue.  I should point out that the products supplied by E2 Limited/Mikia do not include references to distribution by Blackstone or the Blackstone Customer Service number and use a UPC different from Blackstone's UPC.  While there are separate problems with E2 Limited/Mikia, as noted below, their products demonstrate that it was easy to delete the reference to "Distributed by: Blackstone International Ltd." and provide separate customer service information.  DCI/Home Star should have been able to do the same.

3.      Blackstone is currently receiving Product Warranty cards from Costco members for Tower Fans and Personal Fans manufactured by either Home Star and/or E2 Limited/Mikia.  Blackstone has no warranty responsibility for such products and has never authorized Costco to sell such products under the License Agreement with Blackstone Warranty Cards.

4.      Blackstone has been receiving complaints, through its Customer Service phone numbers and its Customer Service email, from consumers who have recently purchased from Costco Tower Fans and Personal Fans manufactured by either DCI/Home Star and/or E2 Limited/Mikia.  Blackstone has no responsibility for such products.

5.      Blackstone is improperly being charged by Costco through its vendor account for returns of Tower Fans and Personal Fans manufactured by either DCI/Home Star or E2 Limited/Mikia that are covered by the License Agreements, not Blackstone's Vendor Agreement.

6.      The Tower Fans and Personal Fans manufactured by Home Star are using Blackstone's UPC and item numbers, leading to confusion about the origin of the goods.  The products under the License Agreement were supposed to have different UPC and item numbers to prevent problems such as this.

7.      Blackstone has been receiving reports that the Customer Service phone number printed on the Tower Fans manufactured by E2 Limited/Mikia is not being answered.  We have received inquiries from  Costco members who have not been able to reach the E2 Limited/Mikia customer service personnel.  Blackstone has tried to reach the E2 Limited/Mikia Customer Service phone number to address these issues but no one is answering calls to that number.

8.      Costco club personnel have been advising Costco members who cannot reach anyone at the E2/Mikia Customer Service number to call Blackstone's Customer Service number.

9.      Costco members, frustrated by the inability to reach anyone at the E2 Limited/Mikia Customer Service number, have been searching online for Blackstone's Customer Service number and seeking service from Blackstone for products that Blackstone does not sell to Costco.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

10.     Blackstone has received reports of malfunctioning fans manufactured by either DCI/Home Star or E2 Limited/Mikia that raise questions about the quality of these products.  Blackstone is limited in its ability to investigate these reports without additional information from Costco.

291.    On May 3, 2019, Blackstone provided additional notice to Costco by email to Costco's corporate counsel attaching a copy of a cease and desist letter from Blackstone to DCI/Home Star.  As described in the May 3, 2019 letter, Blackstone notified Costco (and DCI/Home Star) that they had no right to use designations attributing the distribution of products manufactured by DCI/Home Star to Blackstone or to use Blackstone's customer service phone number and email address.

292.    The May 3, 2019 letter further directed DCI/Home Star to cease and desist (and provided further notice to Costco) from attempting to manufacture, ship, sell, offer for sale, distribute, or import any product representing that it was "Distributed by: Blackstone" or to use Blackstone's customer service information in any way.

293.    In response to the repeated notice provided by Blackstone, Costco nonetheless continued to import, distribute, and/or sell fans that falsely, wrongfully, improperly, and without authorization include "Distributed by: Blackstone" on the packaging and have Blackstone's customer service email and phone number embedded on the product itself.

294.    Although Costco represented that purportedly "changes have been implemented," Costco failed to make "changes" and failed to honor its obligations and commitments.  Indeed, the consequences of Costco's misconduct still exists in the marketplace today and has caused, and continues cause, damage to Blackstone.

295.    The embedding of Blackstone's customer service Information on the product itself is particularly harmful to Blackstone because it will remain even after the consumer disposes of or loses the packaging and/or the instruction manual.

296.    As described above, and evidenced by the substantial number of customer

SECOND AMENDED COMPLAINT - 73
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

complaints regarding fans that were sold directly to Costco by Technomate/E2/Carpenter and/or DCI/Homestar, consumers are confused about the origin of the fans.

297. Costco's intentional decision to continue to falsely designate the origin of the products it purchased directly from the manufactures, in direct defiance of Blackstone's repeated notice, is part of a wrongful and malicious plan to damage Blackstone, mislead the public, and avoid responsibility for product returns, product defects, and any potential product liability from the consumer's use of the products.

298. Costco's misconduct is injurious to Blackstone, including causing confusion as to the source of the infringing products, and an improper association with Blackstone that serves to dilute the goodwill that Blackstone has developed in the market.

299. Accordingly, Costco's false designations of origin, and/or false or misleading descriptions of fact, and/or false or misleading representations of fact, has caused and is likely to continue to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Blackstone with Costco's infringing products, or as to the origin, sponsorship, endorsement, or approval of Costco's goods, services, or commercial activities, and/or dilution of the distinctive quality of Blackstone's intellectual property.

**Costco Infringed Blackstone's Trade Dress**

300. In addition to falsely designated the origin, Costco also infringed Blackstone's trade dress.

301. Among other intellectual property, Blackstone owns and has developed trade dress rights, in connection with the design elements, packaging, and package inserts related to Blackstone's products.

302. More specifically, Blackstone owns trade dress protection for the packaging, as well as trade dress for the overall design, the louver system, grill, arched top form, control panel layout, control panel and icons, logo application, cylindrical stock, base, fit, and finish of the Blackstone Tower Fan. Blackstone also owns trade dress protection for the remote-control design

SECOND AMENDED COMPLAINT - 74
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

including the "circle and cross" layout, control icons, and logo application.

303.   Blackstone's trade dress in the Blackstone Tower Fan is non-functional within the meaning of the Lanham Act.  The packaging, overall design, louver system, grill, arched top form, control panel layout, control panel and icons, logo application, cylindrical stock, base, fit, and finish of the Blackstone Tower Fan, and remote-control design, does not yield a utilitarian advantage over other designs.  Alternative packaging, designs, design features and/or elements, fit, and finish are available.  There is no advertising touting the utilitarian advantages of the packaging, design, design features and/or elements, fit, and finish.  The packaging, design, design features and/or elements, fit, and finish are not especially simple or inexpensive to manufacture. For example, the sizing and shape of top, stock, and base is not functional.  However, those design features and/or elements, as well as the overall design, provide a very sleek, distinctive, and particular look and feel for the product.

304.   The louver system, grill arched top form, cylindrical stock, and base, for example, yield no utilitarian advantage over alternative shapes, no advertising touts the shape as utilitarian, the design is not especially simple or inexpensive to manufacture, and alternative designs are available.  The control panel layout, control panel and icons, and logo application has no utilitarian advantage over different locations or shapes (which alternative designs are available), no advertising touts the particular design as utilitarian, and it is not especially simple or inexpensive to manufacture. The packaging provides no utilitarian advantage over different packaging which could be used, no advertising touts the packaging as utilitarian, and it is not especially simple or inexpensive to manufacture.

305.   Blackstone's trade dress is nonfunctional and is widely recognized by the consumer products industry and has built up extensive goodwill and acquired secondary meaning among the relevant trade as a symbol identifying Blackstone as the creator of the trade dress.

306.   The consuming public has come to recognize Blackstone's trade dress as signifying Blackstone as the particular source of the fans.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

307. Indeed, Blackstone's trade dress is well-known among consumers and is distinctive, as over 2 million units of the Blackstone Tower Fan have been sold throughout the United States since 2016.

308. The trade dress of the Blackstone Tower Fan has developed and acquired secondary meaning to potential consumers as a result of the sales, promotion, and marketing by Blackstone, in that the consuming public has come to associate tower fans bearing such dress with Blackstone.

309. Further, the non-functional design aspects of the Blackstone's intellectual property create products whose trade dress as a whole is inherently distinctive and/or has secondary meaning or acquired distinctiveness, including the placement of the grills and controls, sizing and shape of the top, stock, and base, as well as the overall branding, color, and labeling.  In fact, the non-functional design and look of the Blackstone Tower Fan as a whole is capable of identifying the product as coming from Blackstone.

310. Blackstone's trade dress has secondary meaning and/or acquired distinctiveness, as evidenced by the fact that consumers associate Blackstone' trade dress with Blackstone and are confused by the source of knock-off products sold by Costco.  For example, Costco has captured the distinctive, non-functional features of the Blackstone Tower Fan, which creates (and has, in fact, already created) a likelihood of confusion between the Blackstone Tower Fan and Sierra Tower Fan and OmniBreeze Tower Fan.

311. Costco's copying of the Blackstone Tower Fan and their distinctive design elements, which have secondary meaning and/or acquired distinctiveness, is creating both the likelihood of confusion and actual confusion in the marketplace.  In fact, Blackstone has received numerous consumer complaints and requests for product replacement from consumers who contacted Blackstone's customer service email and/or phone number believing that the Sierra Tower Fan and OmniBreeze Tower Fan sold by Costco are actually the Blackstone Tower Fan.

312. Blackstone's products have their own particular look and Blackstone's trade dress is protectable under the Lanham Act because it is inherently distinctive and/or has achieved

SECOND AMENDED COMPLAINT - 76
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

secondary meaning in the market.  Costco's has used false designations of origin, false or misleading descriptions of fact, and false or misleading misrepresentations of fact that are likely to lead consumers to believe its knock-off fans are Blackstone's products.

313.    In fact, Blackstone's trade dress is inherently distinctive and/or has secondary meaning or acquired distinctiveness, such that when prospective consumers see the Sierra Tower Fan and OmniBreeze Tower Fan their minds jump to Blackstone as the producer of the product. For example, as described above, and evidenced by the substantial number of customer complaints regarding Sierra Tower Fan and other misidentification of the OmniBreeze Tower Fan, consumers are confused about the origin of the fans.

314.    Costco even used a mountain range in the name of their knock-off Sierra Tower Fan, which is a confusingly similar copy of Blackstone's "Cascade" brand.

315.    Blackstone's trade dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying Blackstone as the source of the fans, based on extensive marketing, promotion, and sales throughout the United States.  Indeed, Blackstone's marketing, promotion, and sales of its distinctive trade dress has resulted in considerable customer goodwill.

316.    By mimicking a combination of several elements of Blackstone's trade dress, Costco has misappropriated Blackstone's trade dress. And the mimicking of Blackstone's trade dress in the infringing knock-offs is likely to cause confusion, mistake, or to deceive (and has, in fact, caused confusion, mistake, and deceived) consumers as to the affiliation, connection, or association of Costco's knock-off fans with Blackstone, and/or as to the origin, sponsorship, or approval by Blackstone of Costco's knock-off fans.

317.    In addition, based on extensive and consistent advertising, promotion and sales throughout the United States, Blackstone's trade dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying Blackstone as the source of the fans.

318.    Moreover, Costco's infringement of Blackstone's trade dress is easily apparent from a simple comparison of the Blackstone's Cascade-branded fan with the Sierra Tower Fan:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260





SECOND AMENDED COMPLAINT - 78
CASE NO. 2:20-CV-00964-TSZ





SECOND AMENDED COMPLAINT - 79
CASE NO. 2:20-CV-00964-TSZ





SECOND AMENDED COMPLAINT - 80
CASE NO. 2:20-CV-00964-TSZ





GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



SECOND AMENDED COMPLAINT - 82
CASE NO. 2:20-CV-00964-TSZ



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27





SECOND AMENDED COMPLAINT - 83
CASE NO. 2:20-CV-00964-TSZ

319.   Blackstone has worked to develop its trade dress and reputation within the consumer products industry through extensive industry-focused promotion and marketing, including attending many retailer meetings and trade shows, and has built a valuable business based on demand for its distinctively-styled Blackstone Tower Fan.

320.   Blackstone's products are marketed throughout the United States.

321.   As a result of Blackstone's promotional and marketing efforts, consumers and others in the industry recognize the uniqueness of Blackstone's trade dress, and as a result, Blackstone's trade dress has attained commercial success.

322.   Blackstone's trade dress is a critical component of Blackstone's business and represents enormous commercial value to Blackstone.  Blackstone has invested substantial time and expense in the development and promotion of the Blackstone Tower Fan, efforts that have entailed countless hours of work and resources spread over several years to build the reputation of Blackstone and its trade dress in the consumer products industry.

323.   Blackstone's trade dress is nonfunctional and is widely recognized by the industry and has built up extensive goodwill and acquired secondary meaning among the relevant trade as a symbol identifying Blackstone as the creator of the Blackstone Tower Fan."

324.   Blackstone's trade dress has acquired distinctiveness and secondary meaning among consumers due to Blackstone's promotion and sales of products utilizing Blackstone's trade dress.

325.   As described above, Costco's copying of the Blackstone Tower Fans and their distinctive design elements, has already caused consumers to confused about the origin of the fans, as evidenced by the substantial number of customer comments regarding Costco's knock-off fans.

326.   Costco's unauthorized use of Blackstone's intellectual property is injurious to Blackstone, including lost sales, confusion as to the source of the infringing products, and an improper association with Blackstone that serves to dilute the goodwill that Blackstone has developed in the market.

SECOND AMENDED COMPLAINT - 84
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

327. Accordingly, Costco's infringement of Blackstone's trade dress has caused and is likely to continue to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Blackstone with Costco's infringing products, or as to the origin, sponsorship, endorsement, or approval of Costco's goods, services, or commercial activities, and/or dilution of the distinctive quality of Blackstone's intellectual property.

**Costco Competed Unfairly With Blackstone**

328. In addition to false designation of origin and infringement of Blackstone's trade dress, Costco also competed unfairly with Blackstone.

329. As described above, Costco covertly communicated with Technomate/E2/Carpenter and made misrepresentations and omissions regarding the supply of Blackstone Tower Fans for 2019 season.

330. Costco also conspired with Technomate/E2/Carpenter to misappropriate Blackstone's unique methods and processes, proprietary modeling and formulas, and valuable and exclusive know-how.

331. For example, among other of Blackstone's proprietary information, Costco knowingly conspired to use the Cascade-brand, packaging, product design, pallet optimization, pricing, tooling, and manufacturing logistics.

332. Coscto also improperly utilized confidential information regarding Blackstone's business relationship with DCI/Home Star and Mikia, including Blackstone's proprietary pricing information.

333. Costco also wrongfully utilized Blackstone's purchase orders and invoicing information with DCI/Home Star and Mikia.

334. The fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar also utilized Blackstone's tooling and molds.

335. In addition to destroying Blackstone's business for the 2019 season, Costco also falsely, wrongfully, improperly, and without authorization designated the fans purchased directly

SECOND AMENDED COMPLAINT - 85
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

Technomate/E2/Carpenter and/or DCI/Homestar as "Distributed By" Blackstone.

336.    Costco also falsely, wrongfully, improperly, and without authorization listed Blackstone's customer service information on the fans.

337.    Costco also falsely, wrongfully, improperly, and without authorization utilized Blackstone's warranty cards.

338.    Costco also falsely, wrongfully, improperly, and without authorization utilized Blackstone's UPC number.

339.    Costco's false labeling as "Distributed By," and unauthorized use of Blackstone's customer service information, warranty cards, and UPC number has damaged Blackstone's reputation, misled consumers, and is part of Costco's improper attempt to avoid responsibility for product returns, product defects, and potential product liability from the use of their products.

340.    After destroying Blackstone's business for the 2019 season, Costco continued to unfairly compete with Blackstone in the subsequent season.

341.    As described above, after the Expired License expired, Costco misappropriated Blackstone's unique methods and processes, proprietary modeling and formulas, and valuable and exclusive know-how for its knock-off fans.

342.    For example, Costco unlawfully utilized Blackstone's pallet optimization, packaging design requirements, and shipping container logistics.

343.    Costco also knowingly conspired to utilize Blackstone's Cascade-branded fan as the design base of the knock-off fans.

344.    On information and belief, Costco also utilized Blackstone's tooling and molds for Costco's knock-off fans.

345.    Costco also continued to improperly utilize Blackstone's proprietary and/or confidential information regarding Blackstone's business relationship with the factories.

346.    Costco also continued to wrongfully utilize Blackstone's invoicing and pricing information.

SECOND AMENDED COMPLAINT - 86
CASE NO. 2:20-CV-00964-TSZ

347.     Costco also unlawfully utilized Blackstone's designs, packaging, tooling, pricing, logistics, and other proprietary information for the 2020 season.

348.     As described above, and evidenced by the substantial number of customer complaints regarding fans that were sold directly to Costco by Technomate/E2/Carpenter and/or DCI/Homestar for the 2019 season, as well as Costco's knock-off fans for the 2020 (*i.e.*, the Sierra Tower Fan) and Costco's knock-off fans for the 2021 season (*i.e.*, OmniBreeze Tower Fan), consumers are confused about the origin of the fans.

349.     Costco's unfair competition is injurious to Blackstone, including lost sales, confusion as to the source of the infringing products, and an improper association with Blackstone that serves to dilute the goodwill that Blackstone has developed in the market.

350.     Accordingly, Costco's unfair competition has caused and is likely to continue to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Blackstone with Costco's infringing products, or as to the origin, sponsorship, endorsement, or approval of Costco's goods, services, or commercial activities, and/or dilution of the distinctive quality of Blackstone's intellectual property.

351.     The unauthorized use of Blackstone's intellectual property or confusingly similar variations of Blackstone's products constitutes false designation of origin, trade dress infringement, and unfair competition.  And the unauthorized use of Blackstone's intellectual property has caused injury to Blackstone, including lost sales, confusion as to the source of the infringing products, and an improper association between Costco's fans and Blackstone, which dilutes the goodwill that Blackstone has developed in the market.

352.     Costco's acts of false designation of origin, trade dress infringement, and unfair competition have been done intentionally, willfully, and deliberately, and Costco has profited and been unjustly enriched by sales that Costco would not otherwise have made but for Costco's unlawful conduct.

353.     Costco's activities have caused and, unless enjoined, will continue to cause

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

confusion and deception to the public as to the source and origin of the infringing products. Costco's conduct injures and will continue to injure and dilute Blackstone's goodwill and reputation, for which Blackstone has no adequate remedy at law.

354.    Blackstone is entitled to damages, extraordinary damages, Costco's profits, and attorneys' fees and costs pursuant to 15 U.S.C. § 1117, in an amount to be determined at trial.

355.    Costco's actions with respect to Blackstone's intellectual property have caused, and, unless restrained by this Court, will continue to cause, serious and irreparable harm, for which there is no adequate remedy at law, entitling Blackstone to injunctive relief.

356.    In addition, and in the alternative, in the absence of the Expired License Costco also violated the Lanham Act, 15 U.S.C. § 1125 *et seq*. by utilizing and infringing all of Blackstone's intellectual property listed in Exhibit A, Addendum Exhibit A-1, and Second Addendum Exhibit A-2 of the Expired License.  In the absence of the Expired License, Costco also violated the Lanham Act, 15 U.S.C. § 114 and 15 U.S.C. § 1125 *et seq*., by utilizing and infringing Blackstone's federally-registered and common law trademarks in connection with the fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar for the 2019 season.

**G.    Seventh Claim:  Common Law Unfair Competition**

357.    Blackstone re-alleges and incorporates by reference each of the allegations in the above paragraphs.

358.    The actions of Costco described herein constitute common law unfair competition, including unfair business practices, misrepresentations relating to source, passing off, and misappropriation of trade values.

359.    For example, Costco covertly communicated with Technomate/E2/Carpenter and made misrepresentations and omissions regarding the supply of Blackstone Tower Fans for 2019 season.

360.    Costco    also    conspired    with    Technomate/E2/Carpenter    to    misappropriate

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   Blackstone's unique methods and processes, proprietary modeling and formulas, and valuable and

2   exclusive know-how.

3       361.    Among other of Blackstone's proprietary information, Costco knowingly conspired

4   to use the Cascade-brand, packaging, product design, pallet optimization, pricing, tooling, and

5   manufacturing logistics.

6       362.    Coscto also improperly utilized confidential information regarding Blackstone's

7   business relationship with DCI/Home Star and Mikia, including Blackstone's proprietary pricing

8   information.

9       363.    Costco also wrongfully utilized Blackstone's purchase orders and invoicing

10   information with DCI/Home Star and Mikia.

11      364.    The fans Costco purchased directly from Technomate/E2/Carpenter and/or

12   DCI/Homestar also utilized Blackstone's tooling and molds.

13      365.    In short, Costco conspired with Technomate/E2/Carpenter to usurp Blackstone's

14   turn-key operation, convert Blackstone's manufacturing processes, and steal Blackstone's profits

15   for the 2019 season.

16      366.    In addition to destroying Blackstone's business for the 2019 season, Costco also

17   falsely, wrongfully, improperly, and without authorization designated certain fans as distributed

18   by Blackstone.

19      367.    For example, the following false statement was embedded in the molding, stamped

20   on the packaging, and printed in the manuals of certain fans that Costco purchased directly from

21   Technomate/E2/Carpenter and/or DCI/Homestar:

22              Distributed By:
                Blackstone International Ltd.
23              2018 Lord Baltimore Drive
                Baltimore, MD 21244
24              USA
                Made in China
25

26      368.    However, the fans that Costco purchased directly from Technomate/E2/Carpenter

27   and/or DCI/Homestar were not "distributed by" Blackstone.    Costco's false designation

SECOND AMENDED COMPLAINT - 89
CASE NO. 2:20-CV-00964-TSZ

misrepresented responsibility for the products and misled consumers. And Costco's misconduct unfairly attempts to impose on Blackstone responsibility for products that it has had no role in manufacturing, producing, distributing, or selling.

369.   Costco also sold fans to consumers that falsely, wrongfully, improperly, and without authorization printed Blackstone's customer service phone number and email address in the user manual, as well as on the packaging and embedded on the bottom of the product itself.

370.   For example, fans sold at Costco warehouse outlets that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar had Blackstone's customer service phone number (1-888-525-7969) and email address (customerservice@blackstoneltd.com) embedded in the molding, stamped on the packaging, and printed in the manuals.

371.   However, Costco had no right to use Blackstone customer service information on any of the fans that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

372.   Costco also improperly utilized Blackstone's product warranty cards with fans that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

373.   However, Blackstone has no warranty responsibility for such products and never authorized Costco to sell such products with Blackstone warranty cards or any other information indicating that Blackstone warrants such products. Thus, Costco have falsely represented that Blackstone is providing a warranty for such products.

374.   Costco also used Blackstone's UPC number, leading to confusion about the origin of the goods.

375.   Costco's false labeling as "Distributed By," and unauthorized use of Blackstone's customer service information, warranty cards, and UPC number, has damaged Blackstone's reputation, misled consumers, and is part of Costco's improper attempt to avoid responsibility for product returns, product defects, and potential product liability from the use of its products.

376.   Costco has wrongfully, improperly, and without authorization designated

SECOND AMENDED COMPLAINT - 90
CASE NO. 2:20-CV-00964-TSZ

Blackstone Tower Fans and Blackstone Personal Fans imported, distributed, and/or sold by Costco as distributed by Blackstone, printed Blackstone's customer service information on the package or product itself, and unlawfully utilized Blackstone's UPC number. Costco took these actions deceptively and without authorization. Contrary to Costco's designation, these products are not distributed by Blackstone, and Costco has no right to use Blackstone's customer service information on any of the products Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Home Star.

377. In wrongfully, falsely, improperly, and without authorization designating Blackstone Tower Fans and Blackstone Personal Fans imported, sold and/or distributed by Costco as products as distributed by Blackstone and using Blackstone's UPC number and customer service information, including the email address that clearly identifies Blackstone (customerservice@blackstoneltd.com), Costco is acting deceptively to pass off on the public the goods of Costco as that of Blackstone and trading upon the good name and reputation built up by Blackstone.

378. Based on these actions, the deception of consumers that will confuse the fans imported, distributed, and/or sold and/or by Costco as products of Blackstone is a natural and probable result of Costco's actions. As a result, Costco's unauthorized use of the designation identifying Blackstone as the distributor, Blackstone's UPC number, Blackstone's customer service information, and Blackstone's warranty cards are unfair and deceptive business practices and part of a scheme to misleadingly represent the origin of the product, use Blackstone's customer service contacts without authorization, and avoid liability for fans sold and distributed by Costco and expose Blackstone to responsibility and potential liability for Costco's products, thereby competing unfairly with Blackstone in violation of Washington law.

379. Costco also engaged in unfair methods of competition, including by tortiously interfering with Blackstone's business and contractual relationships with the factories. For example, Costco interfered with Blackstone's agreements with DCI/Home Star (and Mikia) and

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    unfairly competed with Blackstone.

2         380.    In addition, Costco also improperly encouraged, caused, and/or aided in DCI/Home

3    Star's wrongful pursuit of baseless claims against Blackstone.

4         381.    Costco's use of misrepresentations, omissions, and duress also constitutes unfair

5    methods of competition.

6         382.    After destroying Blackstone's business for the 2019 season, Costco also continued

7    to unfairly compete with Blackstone in the subsequent seasons.

8         383.    As described above, after the Expired License expired, Costco conspired to

9    misappropriate Blackstone's unique methods and processes, proprietary modeling and formulas,

10   and valuable and exclusive know-how for Costco's knock-off fans.

11        384.    For example, Costco unlawfully utilized Blackstone's pallet optimization,

12   packaging design requirements, and shipping container logistics.  And Costco also knowingly

13   utilized Blackstone's Cascade-branded fan as the design base for Costco's knock-offs.

14        385.    Costco also continued to improperly utilize Blackstone's proprietary and/or

15   confidential information regarding Blackstone's business relationship with the factories.

16        386.    Costco also continued to wrongfully utilize Blackstone's invoicing and pricing

17   information.

18        387.    On information and belief, Costco also conspired to utilize Blackstone's tooling

19   and molds.

20        388.    Costco also utilized Blackstone's designs, packaging, logistics, and other

21   proprietary information.

22        389.    Costco has also sold, and continues to sell, knock-offs of the Blackstone Tower

23   Fan, including the Sierra Tower Fan and OmniBreeze Tower Fan.

24        390.    Costco's unfair competition is injurious to Blackstone, including lost sales,

25   confusion as to the source of the fans, and an improper association with Blackstone that serves to

26   diluting the goodwill that Blackstone has developed in the market.

27

SECOND AMENDED COMPLAINT - 92
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

391.     In fact, as described above, and evidenced by the substantial number of customer complaints regarding fans that Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Home Star for the 2019 season, as well as Costco's knock-off fans (*i.e.*, the Sierra Tower Fan and OmniBreeze Tower Fan) for the 2020 season and 2021 season, consumers are confused about the origin of the fans.

392.     The deception of consumers, including by Costco's unauthorized use of the designation identifying Blackstone as the distributor, as well as the unauthorized use of Blackstone's customer service information, warranty cards, and UPC number, is part of Costco's unlawful scheme to misleadingly represent the origin of the fans, avoid liability for the fans, and expose Blackstone to responsibility for the fans and potential liability, thereby competing unfairly with Blackstone.

393.     Costco wrongfully acquired profits and business lines to which Blackstone was legally entitled to collect from the sales of its products under existing contracts and business relationships.

394.     Costco further wrongfully acquired profits and business lines to which Blackstone was legally entitled to collect from the sales of its products under existing contracts and business relationships by falsely designating the origin of their products and using Blackstone's customer service information and warranty cards.

395.     Costco also wrongfully acquired profits and business lines to which Blackstone was legally entitled to collect from the sales of knock-off products.

396.     It would be inequitable to allow Costco to retain funds and proceeds resulting from its wrongful conduct.

397.     As a direct, proximate result, and foreseeable result of Costco's misconduct, Blackstone has suffered irreparable harm to its business and reputation, and other damages in an amount to be proven at trial.

398.     As the result of the unfair competition, Costco has caused, and will continue to

SECOND AMENDED COMPLAINT - 93
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

cause, substantial injury to consumers and to Blackstone.  Unless granted an injunction, Costco will continue to employ their wrongful and illegal business practices to Blackstone's immediate and irreparable injury.

399.    In addition, and in the alternative, in the absence of the Expired License Costco also unfairly competed with Blackstone by utilizing all of Blackstone's intellectual property listed in Exhibit A, Addendum Exhibit A-1, and Second Addendum Exhibit A-2 of the Expired License. In the absence of the Expired License, Costco also unfairly competed with Blackstone by utilizing Blackstone's federally-registered and common law trademarks in connection with the fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar for the 2019 season.

**H.    Eighth Claim:  Violation of Washington Consumer Protection Act**

400.    Blackstone re-alleges and incorporates by reference each of the allegations in the above paragraphs.

401.    Costco's wrongful acts constitute unfair methods of competition and/or unfair and deceptive acts and practices occurring in commerce, in violation of the Washington Consumer Protection Act, RCW 19.86, *et seq*., including by at least the following misconduct: (i) falsely and misleadingly designating certain fans as "Distributed By" Blackstone; (ii) misappropriating Blackstone's customer service information and misrepresenting customer service; (iii) misappropriating Blackstone's warranty cards and misrepresenting warranty information; (iv) utilizing Blackstone's UPC number without authorization; (v) misappropriating Blackstone's trade dress; (vi) engaging in unfair business practices; (vii) violating the Lanham Act as a predicate establishing a public harm; and (viii) violations of additional predicates affecting the public interest.

**Falsely and Misleadingly Designating Certain Fans as "Distributed By" Blackstone**

402.    As described above, Costco falsely, wrongfully, improperly, and without authorization designated certain fans as "Distributed By" Blackstone.

403.    Costco's false labeling as "Distributed By" Blackstone, not only has the capacity

SECOND AMENDED COMPLAINT - 94
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

to deceive a substantial portion of the public, but (in fact) has misled the public and has caused consumer confusion as to the source and origin of the fans.

**Misappropriating and Misrepresenting Blackstone's Customer Service Information**

404.    As described above, Costco also falsely, wrongfully, improperly, and without authorization listed Blackstone's customer service information on the fans purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

405.    Blackstone has received (and continues to receive) complaints through its customer service phone numbers and customer service email from consumers who purchased fans that were not sold to Costco by Blackstone.

406.    Costco's unauthorized use of Blackstone's customer service information, not only has the capacity to deceive a substantial portion of the public, but (in fact) has misled the public and has caused consumer confusion as to the source and origin of the fans.

**Misappropriating and Misrepresenting Blackstone's Warranty Cards**

407.    As described above, Costco also falsely, wrongfully, improperly, and without authorization utilized Blackstone's warranty cards for fans purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

408.    Blackstone has also received warranty cards from consumers for fans that were not sold to Costco by Blackstone.

409.    Costco's unauthorized use of Blackstone's warranty cards, not only has the capacity to deceive a substantial portion of the public, but (in fact) has misled the public and has caused consumer confusion as to the source and origin of the fans.

**Utilizing Blackstone's UPC Number Without Authorization**

410.    As described above, Costco also falsely, wrongfully, improperly, and without authorization utilized Blackstone's UPC number on fans purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar.

411.    Costco's unauthorized use of Blackstone's UPC number, not only has the capacity

SECOND AMENDED COMPLAINT - 95
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

to deceive a substantial portion of the public, but (in fact) has misled the public and has caused consumer confusion as to the source and origin of the fans.

**Misappropriating Blackstone's Trade Dress**

412.    As described above, Costco has misappropriated Blackstone's trade dress by mimicking a combination of several elements of Blackstone's trade dress.

413.    Blackstone's products have their own particular look and Blackstone's trade dress is protectable under the Lanham Act because it is inherently distinctive and/or has achieved secondary meaning or acquired distinctiveness in the market.  Based on extensive marketing, promotion, and sales throughout the United States, the consuming public has come to recognize Blackstone's trade dress as signifying Blackstone as the particular source of fans that mimic Blackstone's packaging, overall design, louver system, grill, arched top form, control panel layout, control panel and icons, logo application, cylindrical stock, base, fit, and finish of the Blackstone Tower Fan and remote-control design.  Blackstone's trade dress is inherently distinctive and/or secondary meaning or acquired distinctiveness, as evidenced by the fact that consumers associate Blackstone' trade dress with Blackstone and are confused by the source of knock-off products sold by Costco.

414.    Costco's mimicking of the Blackstone Tower Fans and their distinctive design elements, which have secondary meaning and/or acquired distinctiveness, not only has the capacity to deceive a substantial portion of the public, but (in fact) has misled the public and has caused consumer confusion as to the source and origin of the fans.

**Engaging in Unfair Business Practices**

415.    As described above, Costco has engaged in unfair business practices, including utilizing unfair methods of competition and/or unfairly competing with Blackstone.

416.    Costco engaged in such unfair business practices both for the 2019 season and after the Expired License expired.

417.    For example, Costco misrepresented certain fans as distributed by Blackstone,

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1  misrepresented customer service information, misappropriate Blackstone's warranty cards, and

2  unlawfully utilized Blackstone's UPC number.

3      418.    During both the 2020 season and 2021 seasons, Costco also sold knock-offs of

4  Blackstone's fans.

5      419.    Costco also conspired to utilize Blackstone's tooling and molds.

6      420.    Costco also misappropriated Blackstone's unique methods and processes,

7  proprietary modeling and formulas, and valuable and exclusive know-how

8      421.    Costco's unfair business practices, not only has the capacity to deceive a substantial

9  portion of the public, but (in fact) has misled the public and has caused consumer confusion as to

10 the source and origin of the fans.

11 **Violating the Lanham Act**

12     422.    As described above, Costco has violated the Lanham Act in several ways.

13     423.    The unauthorized use of Blackstone's intellectual property or confusingly similar

14 variations of Blackstone's products constitutes an unfair method of competition and/or unfair and

15 deceptive act or practice.  And the unauthorized use of Blackstone's intellectual property has

16 caused injury to Blackstone and confusion as to the source of the infringing products.  Thus,

17 Costco's many violations of the Lanham Act provide a predicate under the CPA in that they

18 establish a public harm.

19     424.    Costco's several violations of the Lanham Act, not only has the capacity to deceive

20 a substantial portion of the public, but (in fact) has misled the public and has caused consumer

21 confusion as to the source and origin of the fans.

22 **Additional Predicates for Costco's Unfair and/or Deceptive Acts or Practices**

23     425.    In addition, Coscto's unfair and/or deceptive acts or practices also violates

24 numerous additional predicates affecting the public interest.

25     426.    For example, Costco's false designation as "distributed by" Blackstone constitutes

26 as violation of 15 U.S.C. §1453 (a provision of the Fair Packaging and Labeling Act), which

27

SECOND AMENDED COMPLAINT - 97
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   prohibits distribution of "any packaged consumer commodity" that fails to conform to specified
2   labeling requirements, including "the name and place of business of the manufacturer, packer, or
3   distributor."

4   427.   Costco's unfair and/or deceptive acts or practices also violate Section 337 of the
5   Tariff Act (19 U.S.C. § 1337), which provides that unfair methods of competition and unfair acts
6   in the importation or sale of articles into the United States are unlawful.

7   428.   Additionally, on information and belief, Costco utilized Blackstone's tooling and
8   molds without authorization, which violates RCW 63.52.010.

9   429.   All of Costco's wrongful acts described above — including (i) falsely and
10  misleadingly designating certain fans as "Distributed By" Blackstone; (ii) misappropriating
11  Blackstone's customer service information and misrepresenting customer service; (iii)
12  misappropriating Blackstone's warranty cards and misrepresenting warranty information; (iv)
13  utilizing Blackstone's UPC number without authorization; (v) misappropriating Blackstone's trade
14  dress; (vi) engaging in unfair business practices; (vii) violating the Lanham Act as a predicate
15  establishing a public harm; and (viii) violations of additional predicates affecting the public interest
16  — have  caused and are likely to continue to cause confusion, mistake, and deception among
17  consumers, and the public, including existing and potential customers, as to the source, origin,
18  and/or affiliation of (a) the fans Costco purchased directly form Technomate/E2/Carpenter and/or
19  DCI/Home Star for the 2019 season; (b) the knock-off fans (*i.e.*, the Sierra Tower Fan) for the
20  2020 season; and (c) the knock-off fans (*i.e.*, the OmniBreeze Tower Fan) for the 2021 season.

21  430.   Costco's wrongful acts have the capacity to deceive a substantial portion of the
22  public and, as described above, have already deceived a substantial number of consumers.

23  431.    Costco's wrongful acts have caused and are likely to continue to cause confusion,
24  mistake, and deception, thereby both impacting the public interest and injuring Blackstone's
25  business and reputation.

26  432.   Costco's wrongful acts have caused and are likely to continue to cause confusion,

27

SECOND AMENDED COMPLAINT - 98
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

mistake, and deception among consumers, and the public, including existing and potential customers, as to the source, origin, and/or affiliation of the Sierra Tower Fan and OmniBreeze Tower Fan.

433.   Costco's conduct has affected and is contrary to the public interest, has tended to mislead a substantial portion of the public as to the source, origin, endorsement or approval of Blackstone's products, and will continue to injure Blackstone in its business and property.

434.   Costco's unfair methods of competition and/or unfair and deceptive acts or practices are capable of repetition, have confused consumers and the public, and are likely to injury others.  For example, following Costco's knock-off fans for the 2020 season, another knock-off fan labeled "Omnibreeze" was sold at Costco outlets for the 2021 season.  In addition, the unfair methods of competition and/or unfair and deceptive acts or practices utilized by Costco have been or will be utilized by Costco and others to injury additional plaintiffs.

435.   Among other examples of Costco's unfair or deceptive acts affecting the public interest, Costco intentionally misled consumers regarding both the source of the fans and which company was responsible for customer service.  The resulting confusion is not only capable of repetition, but also has results in repeated (and continuing) customer confusion.  As described above, consumers are confused, frustrated, and angry.  In short, Costco falsely labeled the fans as distributed by Blackstone and also intentionally lied to the consuming public about Blackstone's responsibility for customer service.

436.   The deception of consumers, including by Costco's unauthorized use of the designation identifying Blackstone as the distributor, as well as the unauthorized use of Blackstone's customer service information, warranty cards, and UPC number are unfair and deceptive business practices and part of a scheme to misleadingly represent the origin of the fans, which has already created significant confusion and harmed the public.

437.   As a direct, proximate, and foreseeable result of Costco's unfair methods of competition and unfair and deceptive acts and practices, Costco has been unjustly enriched and

SECOND AMENDED COMPLAINT - 99
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   Blackstone been injured and has suffered substantial damages, in an amount to be proven at trial,

2   including treble damages and reasonable attorney's fees and costs under RCW 19.86.090.

3       438.    Unless the foregoing alleged actions of Costco are enjoined, Blackstone will

4   continue to suffer injury and damage.  Accordingly, Blackstone should also be awarded

5   preliminary and permanent injunctive relief, treble damages, and costs, including reasonable

6   attorneys' fees, under RCW 19.86.090 and RCW 7.40.020.

7       439.    In addition, and in the alternative, in the absence of the Expired License Costco

8   also violated the Washington Consumer Protection Act, RCW 19.86, *et seq.* by utilizing all of

9   Blackstone's intellectual property listed in Exhibit A, Addendum Exhibit A-1, and Second

10  Addendum Exhibit A-2 of the Expired License.  In the absence of the Expired License, Costco

11  also violated the Washington Consumer Protection Act, RCW 19.86, *et seq.* by utilizing

12  Blackstone's federally-registered and common law trademarks in connection with the fans Costco

13  purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar for the 2019 season.

14  **I.**    **Ninth Claim:  Copyright Infringement**

15      440.    Blackstone re-alleges and incorporates by reference each of the allegations in the

16  above paragraphs.

17      441.    Blackstone is the rightsholder to the copyrights of Copyrighted Works, which

18  consist of original material that constitutes copyrightable subject matter under the laws of the

19  United States.

20      442.    Blackstone has complied in all respects with the Copyright Act and all of the laws

21  of the United States governing copyrights, including timely registering the copyrights of

22  Copyrighted Works with the United States Copyright Office, Registration Nos. TX0008690544,

23  TX0008696259, and TXu002132551.

24      443.    Costco has directly, vicariously and/or contributorily infringed, and unless

25  enjoined, will continue to infringe Blackstone's copyrights, by reproducing, displaying,

26  distributing and utilizing the Copyrighted Works for purposes of trade in violation of 17 U.S.C. §

27

SECOND AMENDED COMPLAINT - 100
CASE NO. 2:20-CV-00964-TSZ

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

501 *et seq.*

444.  Costco has willfully infringed on the Copyrighted Works by knowingly reproducing, displaying, distributing, and/or utilizing the Copyrighted Works for purposes of trade, and/or materially contributed the infringing conduct with respect to the Copyrighted Works.

445.  Costco's willful infringing conduct has disregarded Blackstone's rights.  Costco's acts of infringement are willful because, *inter alia*, Costco can cease distribution and/or sale of the Sierra Tower Fan.

446.  As a direct and proximate result of the foregoing acts, Blackstone has been and will continue to be harmed.  Under 17 U.S.C. § 504(b), Blackstone is entitled to its actual damages, including any and all of Costco's profits attributable to its wrongful conduct, or statutory damages under 17 U.S.C. § 504(c).  Blackstone is also entitled to its costs, including reasonable attorney fees, under 17 U.S.C. § 505.

447.  Blackstone also seeks and is entitled to an order under 17 U.S.C. § 502 enjoining Costco from any further infringement of Blackstone's copyrights.

448.  In addition, and in the alternative, in the absence of the Expired License Costco has also directly, vicariously and/or contributorily infringed, and unless enjoined, will continue to infringe Blackstone's copyrights, by reproducing, displaying, distributing and utilizing the Copyrighted Works for purposes of trade in violation of 17 U.S.C. § 501 *et seq.* in connection with the fans Costco purchased directly from Technomate/E2/Carpenter and/or DCI/Homestar for the 2019 season.

**K.   Tenth Claim:  In the Alternative, in the Absence of the Expired License, Infringement of Federally-Registered and Common Law Trademarks**

449.  Blackstone re-alleges and incorporates by reference each of the allegations in the above paragraphs, excluding allegations for copyright infringement.

450.  As described above, the Expired License was induced by fraudulent inducement, fraudulent concealment, fraud, intentional misrepresentation, and/or negligent misrepresentation, as well as undue duress.  If the Expired License is rescinded, voided or voidable, invalid, and/or

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1   otherwise not enforceable, then Costco has also infringed Blackstone's trademarks.

2   451.   Blackstone owns a federally-registered trademark for its stylized "B."

3   452.   Blackstone also owns trademark protection for the Cascade brand name, logo, and
4   proprietary alphabet, as well as Blackstone's name and logo.  Blackstone has continuously used
5   those unregistered trademarks for several years.  Given Blackstone's use of its common law
6   trademarks since long before any date upon which Costco can rely for purposes of priority,
7   Blackstone's unregistered trademarks are senior to any rights of Costco.

8   453.   In the absence of the Expired License, Costco's use of Blackstone's stylized "B"
9   mark constitutes trademark infringement in violation of in violation of 15 U.S.C. § 1114.

10   454.   In the absence of the Expired License, Costco's use of Blackstone's unregistered
11   trademarks constitutes trademark infringement in violation of in violation of 15 U.S.C. § 1125 and
12   the common law.

13   455.   In the absence of the Expired License, Costco's infringement of Blackstone's
14   federally-registered and common law trademarks is knowing, deliberate, willful, intended to cause
15   mistake and to deceive, and in disregard of Blackstone's rights.

16   456.   In the absence of the Expired License, as a direct and proximate result of Costco's
17   infringement of Blackstone's federally-registered and common law trademarks, Blackstone has
18   suffered damages in an amount to be proven at trial.

19   457.   In the absence of the Expired License, pursuant to 15 U.S.C. § 1117, Blackstone is
20   further entitled to an award of enhanced damages and attorneys' fees and costs.

21   458.   In addition, in the absence of the Expired License, Blackstone has no adequate
22   remedy at law that will compensate Blackstone for the continued and irreparable harm Blackstone
23   will suffer if Costco's conduct is allowed to continue.  Thus, in the absence of the Expired License,
24   Blackstone seeks to enjoin Costco from using Blackstone's federally-registered and common law
25   trademarks in connection with the fans Costco purchased directly from Technomate/E2/Carpenter
26   and/or DCI/Homestar.

27

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

## VI.   **DEMAND FOR JURY TRIAL**

459.   Pursuant to Fed. R. Civ. P. 38, Blackstone demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

## VII.   **PRAYER FOR RELIEF**

Wherefore, Blackstone prays for relief as follows:

A.   For judgment against Costco and an award for all actual, compensatory, direct, statutory, consequential, and/or any other damages, and any costs incurred in the fair and reasonable efforts Blackstone has promptly taken to mitigate its losses, in an amount to be proven at trial;

B.   For damages resulting from Costco's breach of the 2019 Fan Program Agreement, breach of implied covenant of good faith and fair dealing, fraud, negligent misrepresentations, tortious interference, violations of the Lanham Act, common law unfair competition, violations of the CPA, and infringement of Blackstone's copyrights, the exact amount of which will be determined at trial;

C.   For enhanced and/or treble damages, as authorized by law, including 15 U.S.C. § 1117 and RCW 19.86.090;

D.   For an accounting and award to Blackstone and against Costco of all Costco's profits, gains or unjust enrichment, including future profits, in an amount to be proven at trial;

E.   For imposition of a constructive trust to collect funds and proceeds resulting from the sales of products formerly sold by Blackstone, which were only acquired through Costco's wrongful conduct, for the benefit of Blackstone and order Costco as constructive trustee to convey all of its right, title, and interest in any and all these funds and proceeds Costco has received to Blackstone;

F.   For an award of Blackstone's costs and reasonable attorney fees incurred in bringing this action pursuant to any applicable provision of law, including pursuant to 15 U.S.C.

SECOND AMENDED COMPLAINT - 103
CASE NO. 2:20-CV-00964-TSZ

§ 1117 and RCW 19.86.090;

G.      For an award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

H.      For injunctive relief prohibiting Costco from the manufacture, distribution, importation, sale, and/or sale for importation of the Sierra Tower Fan and OmniBreeze Tower Fan;

I.      For leave to amend this Complaint as necessary; and

J.      For such other and further relief as the Court may deem just and proper.


**RESPECTFULLY SUBMITTED** this February 13, 2023.


                                **GOLDFARB & HUCK ROTH RIOJAS, PLLC**
                                */s/ Christopher M. Huck*
                                Christopher M. Huck, WSBA No. 34104
                                (huck@goldfarb-huck.com)
                                */s/ R. Omar Riojas*
                                R. Omar Riojas, WSBA No. 35400
                                (riojas@goldfarb-huck.com)
                                925 Fourth Avenue, Suite 3950
                                Seattle, Washington 98104
                                Phone: (206) 452-0260


                                **P.R. GIERI LLC**
                                Paul R. Gieri (admitted *pro hac vice*)
                                (paul.gieri@prgierillc.com)
                                6701 Democracy Blvd Suite 300
                                Bethesda, Maryland 20817
                                Phone: (860) 235-6314

                                **Attorneys for Plaintiff**
                                **Blackstone International, Ltd.**

SECOND AMENDED COMPLAINT - 104
CASE NO. 2:20-CV-00964-TSZ

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned certifies that the foregoing document was filed electronically with the

3

Clerk of the Court using the CM/ECF system on February 13, 2023 and was served via the Court's

4

CM/ECF system on all counsel of record.

5

DATED this February 13, 2023.

6

7

*/s/ Christopher M. Huck*
Christopher M. Huck, WSBA No. 34104

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

SECOND AMENDED COMPLAINT - 105
CASE NO. 2:20-CV-00964-TSZ